In the Matter of the Claim of DARBY B. BURKE, Respondent. MANAGEMENT CHARLES L. WAGNER, INC., Appellant; MICHAEL J. MURPHY, Acting Industrial Commissioner, Respondent.

Third Department, November 16, 1943.

*Kurz & Kurz,* attorneys (*Meyer Kurz* and *Avrom M. Jacobs* of counsel), for appellant.

*Nathaniel L. Goldstein, Attorney-General* (*Francis R. Curran* and *W. Gerard Ryan, Assistant Attorneys-General,* of counsel), for Acting Industrial Commissioner, respondent.

CRAPSER, J. This is an appeal by the employer appellant from a decision of the Unemployment Insurance Appeal Board, made on the 7th day of June, 1943, which determines that Management Charles L. Wagner, Inc., is liable for contributions under the Unemployment Insurance Law (Labor Law, art. 18) based upon the earnings of the claimant Darby B. Burke, and affirming a decision of an Unemployment Insurance referee.

The appellant is a corporation organized under the laws of the State of New York, with its principal offices in New York City. Its business is that of " concert management and artist management." Between October 9, 1941, and November 20, 1941, it produced and promoted a traveling grand opera known as " The Barber of Seville." Said production toured the United States, being commonly known as a road show or traveling show.

Appellant employed claimant as a stage electrician for the opera company at the rate of $100 per week, commencing on the said 9th day of October, 1941. His total earnings are undisputed, being six weeks at the aforesaid rate, amounting in all to $600. The terms of claimant's employment were embodied in a written contract bearing date October 17, 1941, said contract being a printed form contract of the International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada. Claimant was a resident of New York City; he was hired in New York City.

Before the company went on tour, claimant spent several days in New York City preparing for the trip, obtaining supplies, et cetera. The company had its first performance at Syracuse on October 10, 1941.

Claimant accompanied The Barber of Seville company on its tour, doing the necessary electrical work on the stages of the local theaters at which the company performed. The company toured fifteen States in the eastern and central portions of the United States, and conducted twenty-one performances in different cities, including one performance at Buffalo, New York, on November 15, 1941. Claimant and the company trav-

eled by chartered bus. The arrangements for the hiring of the bus were made by the appellant. The last performance was held in Pennsylvania on November 19, 1941. The company started on its tour on October 9, 1941; it returned on November 20, 1941.

The itinerary of the opera company had been mapped out in advance of the trip by the employer appellant. Appellant's president had traveled by automobile through the country during the preceding spring season to negotiate bookings for the company. These bookings were on a fixed fee basis. However, if the company had any open dates it would accept a contract on a percentage basis.

The opera company, including the claimant, was under the direction of its general manager, Harry Rankin, who traveled with the company and was in charge of the financial and business aspects of the tour. The general manager was required to look after the movement of the company from city to city, and to arrange travel accommodations; to collect the stipulated fees or percentages; to pay the salaries weekly to the individual members of the opera company; to pay all expenses of the trip; to remit any surplus to the office of the appellant at New York City; to handle any business concerning the company that might arise. He was given full instructions as to his duties before leaving New York City on the trip. He had plenary powers to handle situations on the road, but would telephone or wire the office of the appellant at New York City in the event that any problem might arise. He sent his reports of the receipts and disbursements of the opera company to the New York office, which reports were filed at the office of the company.

It is conceded that the appellant was subject to the Unemployment Insurance Law and that the claimant was an employee, and the amount of his earnings is conceded. It is contended, however, that such earnings are not taxable under the New York State Unemployment Insurance Law.

The pertinent portions of section 502, subdivision 1, of the Unemployment Insurance Law (Labor Law, art. 18) are as follows:

" ' Employment,' except where the context shows otherwise, means any employment under any contract of hire, express or implied, written or oral, including all contracts entered into by helpers and assistants of employees, whether paid by employer or employee, if employed with the knowledge actual or constructive of the employer.

" (1) The term ' employment ' shall include an individual's entire service, performed within or both within and without the state if: (a) the service is localized in this state; or (b) the service is not localized in any state but some of the service is performed in this state, and (i) the base of operations, or, if there is no base of operations, then the place from which such service is directed or controlled, is in this state; or (ii) the base of operations or place from which such service is directed or controlled is not any state in which some part of the service is performed, but the individual's residence is in this state."

There are two issues involved upon this appeal: (a) Does claimant's employment come within the definition of the term " employment " as contained in section 502, subdivision 1, hereinabove set forth? (b) Is section 502, subdivision 1, of the Law a constitutional exercise of the taxing power by the State of New York if applied to ambulatory employments both within and without the State such as involved in the case at bar?

All the arrangements were made within the State of New York; the company was directed from the State of New York; reports were made to the State of New York; the tour started in the State of New York and finished in the State of New York. The corporation through its general manager and representatives in charge of the trip directed the activities of the trip at all times; no matter where it was located it was subject to the instructions and orders of the employer corporation; its principal house residence and place of business was in the State of New York; any excess receipts, more than enough to pay actual expenses on the road, were transmitted to the home office in the State of New York.

The legal right to direct and control from New York determines. This, the corporation had the right to do. The tax is not one placed on work done by the employees of an employer subject to the law. It is not a tax on remuneration paid to such employees for services done outside the State, although the remuneration paid is one of the elements entering into the measurement of the amount of the tax to be paid. The tax here imposed is an excise tax on employers and is to be paid by employers with respect to having individuals in their employ. It is measured, of course, by wages. It is a tax imposed upon a relationship and upon the right to employ. The right to employ was exercised by this corporation in the State of New York; the employer and employee relationship had its origin in the State of New York. The Unemployment Insurance Law was

a part of the contract of employment entered into by this employer and its employees, and by the express terms of the Unemployment Insurance Law the contract of employment and relation of employer and employee were given extra-territorial effect.

All the evidence supports the determination made and the determination should be affirmed.

HILL, P. J., BLISS, HEFFERNAN and SCHENCK, JJ., concur.

Decision affirmed, with costs against appellant to respondent, Acting Industrial Commissioner.