In the Matter of the Claim of JOSEPH N. MALLIA, Claimant. EDWARD CORSI, as Industrial Commissioner, Respondent; P. S. THORSEN & Co., INC., Appellant.

Argued February 25, 1949; decided May 26, 1949.

*Joseph R. Kelley* and *William H. West, Jr.,* for appellant. I. The coverage of article 18 of the Labor Law does not include claimant's service performed in New Jersey in the first quarter of 1944 because that service was localized in New Jersey. II. The coverage of article 18 of the Labor Law does not include claimant's service performed in New Jersey in the first quarter of 1944 because the base of operations for that service was in New Jersey. III. The coverage of article 18 of the Labor Law does not include claimant's service performed in New Jersey in the first quarter of 1944 because the place of direction or control of that service was in that State. IV. The construction

of subdivision 3 of section 511 of the Labor Law enunciated by the court below is not supported by any authorized administrative interpretation, whereas the decision of the Appeal Board was in accord with actual administrative practice. (*Matter of Stupack,* 274 N. Y. 198.) V. The statute as construed by the court below is repugnant to section 8 of article I of the Constitution of the United States. (*International Shoe Co.* v. *Washington,* 326 U. S. 310; *Joseph* v. *Carter & Weekes Stevedoring Co.,* 330 U. S. 422; *Puget Sound Stevedoring Co.* v. *Tax Comm.,* 302 U. S. 90; *Southern Pacific Co.* v.*Arizona,* 325 U. S. 761; *Morgan* v. *Virginia,* 328 U. S. 373; *Freeman* v. *Hewit,* 329 U. S. 249; *Richfield Oil Corp.* v. *State Board of Equalization,* 329 U. S. 69.)

*Charles A. Malloy* and *Herman D. Ringle* for Division of Employment Security of the Department of Labor and Industry of New Jersey, *amicus curiæ,* in support of appellant's position. The services performed by claimant are governed by the provisions of subdivision 4 of section 511 of the Unemployment Insurance Law.

*Nathaniel L. Goldstein, Attorney-General (Francis R. Curran* and *Wendell P. Brown* of counsel), for respondent. I. Claimant is entitled to be credited with his wages received during 1944, for services rendered to appellant in New York and New Jersey, as a basis for unemployment insurance benefits. His entire service, both within and without the State of New York, constituted " employment " as defined by the New York statute. II. The statute, as construed by the Appellate Division is not repugnant to section 8 of article I of the Constitution of the United States. (*Steward Machine Co.* v. *Davis,* 301 U. S. 548; *Carmichael* v. *Southern Coal & Coke Co.,* 301 U. S. 495; *McGoldrick* v. *Berwind-White Coal Mining Co.,* 309 U. S. 33; *Western Live Stock* v. *Bureau of Revenue,* 303 U. S. 250; *Chamberlin, Inc.,* v. *Andrews,* 271 N. Y. 1, 299 U. S. 515; *Matter of Burke,* 267 App. Div. 127; *Standard Dredging Corp.* v. *Murphy,* 319 U. S. 306; *Western Union Tel. Co.* v. *Texas,* 105 U. S. 460; *Ohio Riv. & Western Ry. Co.* v. *Dittey,* 232 U. S. 576; *Shaffer* v. *Carter,* 252 U. S. 37; *Arrowsmith* v. *Harmoning,* 118 U. S. 194; *Walling* v. *Jacksonville Paper Co.,* 317 U. S. 564.)

BROMLEY, J. To claimant the question herein is whether he was entitled to receive unemployment insurance benefits from

the State of New York at the rate of $17 per week or $21 per week. Stated more broadly, the question presented is, whether in the circumstances of this case, which are common in industry, the claimant is entitled to be credited with his wages received during 1944, for services rendered for appellant within New Jersey as well as within New York in determining the amount of his weekly benefit rate under the New York Unemployment Insurance Law (Labor Law, art. 18). The answer to that question is said to be of importance to employers and employees generally and to the administration of the unemployment insurance statutes throughout the nation.

Appellant is a New York corporation, licensed to do business in New Jersey, with its principal office at Brooklyn, New York. Its business is insulating pipes and mechanical equipment on ships, which is accomplished on board the ships at various places in New York and New Jersey. During 1944, the period with which we are concerned, operations within New York were under the supervision of a superintendent whose office was in Brooklyn. The company had three offices in New Jersey, at Hoboken, Kearney and Port Newark, each under a superintendent in charge of operations in those areas. All operations were under the direction of a general supervisor who had an office in Brooklyn and visited the areas where the work was done. In the Kearney and Port Newark offices, some of the material used in the work in New Jersey was stored. Each of the New Jersey superintendents had the power to hire and fire personnel.

Men working on jobs in New Jersey reported directly to the Kearney and Port Newark offices, or at Hoboken to the ships, and their time cards were turned in at the end of each week and sent to Brooklyn where the payrolls were made up. Most of the employees were hired in Brooklyn, and were shifted from job to job upon request of the various superintendents.

Claimant, Mallia, was hired in Brooklyn on January 28, 1943, as a pipe coverer's helper, worked for this employer until March, 1944, and from September, 1944, until November 9, 1945. Although the record is not clear upon this point, the board in effect found that all of Mallia's services were performed under a single contract of hire. During the period January-March, 1944, he received $318.13 for services performed in New York and $355 for services performed in New Jersey. The record indicates that Mallia worked intermittently in New Jersey and

New York, thirty-nine days in New Jersey and thirty days in New York. During the period September-December, 1944, all of his wages ($628.14) were received for work done in New York. The employer reported Mallia's earnings in New York to the State of New York, and his earnings in New Jersey to the State of New Jersey, and paid unemployment insurance contributions upon the respective wages to each State.

Mallia's claim for unemployment insurance benefits was filed in New York on November 20, 1945, and his base year was 1944 (Labor Law, §§ 520, 521, 590). The Appellate Division has held that his rate of benefit should be based upon his wages for service performed in both New York and New Jersey during that year.

In determining his rate of benefits, claimant is entitled to credit for wages paid him for the services performed in New Jersey during the first quarter of 1944 if that work was '' employment '' in New York within section 511 of the Labor Law. The pertinent portions of that statute are:

'' 1. General definition. ' Employment ' means any service under any contract of employment for hire, express or implied, written, or oral.

'' 2. Work localized in state. The term ' employment ' includes a person's entire service performed within or both within and without this state if the service is localized in this state. Service is deemed localized within the state if it is performed entirely within the state or is performed both within and without the state but that performed without the state is incidental to the person's service within the state, for example, is temporary or transitory in nature or consists of isolated transactions.

'' 3. Work within and without the state. The term ' employment ' includes a person's entire service performed both within and without this state provided it is not localized in any state but some of the service is performed in this state, and

'' (a) the person's base of operations is in this state; or

'' (b) if there is no base of operations in any state in which some part of the service is performed, the place from which such service is directed or controlled is in this state; or

'' (c) if the base of operations or place from which such service is directed or controlled is not in any state in which some

part of the service is performed, the person's residence is in this state.

" 4. Work within the state. Service performed within this state but not otherwise within the provisions of this section is employment if contributions are not required with respect to such service under an unemployment compensation law of any other state or the federal government."

The unemployment insurance laws of the various States, most of which were enacted during the decade of the depression, originally contained varying definitions of " employment " by which the scope of the several laws was to be determined. (See L. 1935, ch. 468, § 1.) This led to uncertainty of application of those laws, as to the payment of benefits and assessment of taxes upon employers, where a worker had performed services for a single employer in a number of States.

In 1937, after conferences among representatives of the various States and representatives of the national Social Security Board, a proposed uniform definition of " employment " was drafted for submission to the State Legislatures in order to eliminate such uncertainty. The purpose of that definition was stated by the Social Security Board as follows: " This definition is based on two principles: (1) All the employment of an individual should be allocated to one State and not divided among the several States in which he might perform services, and such State should, of course, be solely responsible for benefits payable to him; (2) the State to which his employment is allocated should be the one in which it is most likely that the individual will become unemployed and seek work." (Social Security Board, Employment Security Memorandum No. 13, 1937.)

That provision was adopted by New York (L. 1939, ch. 662, as amd. by L. 1940, ch. 217) and a large number of other States (see Compton, The Social Security Payroll Taxes, 245 et seq.), substantially as it appears in the present New Jersey statute, which had been enacted in 1936 (N. J. L. 1936, ch. 270, § 19; N. J. Stat. Ann., tit. 43, § 21–19). In 1944, New York amended its statute to read as set forth above in section 511, without substantial change in its effect (L. 1944, ch. 705).

The purpose of the Legislature is manifest upon the face of the statute and in the history of its adoption. It is to bring within the scope of the New York act those employees who work

both in New York and one or more other States when the most substantial contacts of the employment are in New York. That end is to be effected by applying to their services a number of tests — localization, location of base of operations, source of direction or control, and finally residence of the employee (§ 511, subds. 2, 3). It is clear that the statutory tests are to be applied in succession to the entire service, both "within and without this state"; and only if that entire service so considered is not employment in New York may a portion of it be considered separately as employment in one or more other States. Only if the statute is so construed will it serve as a useful instrument for the accomplishment of its dominant purpose, and it is a misconception of that necessity which has led to much of the confusion in this case. It seems plain that the statute is addressed to specialists in the field of unemployment insurance and, as Mr. Justice FRANKFURTER has said, it "must be read by judges with the minds of the specialists." *

The Unemployment Insurance Appeal Board held that the localization test could not control since the New Jersey services were so substantial that they might not be characterized as incidental to his services in New York, and then held that the base of operations for that work was in New Jersey, so that it was not covered by the New York statute. The Appellate Division held that the law permits use of the base of operations as a determining factor only when there is a single base of operations in one State where part of the work is performed, and that where there are bases within each of two or more States the source of direction or control must be considered. Mallia's service was held to have been directed from the employer's office in Brooklyn.

The Appeal Board and the Appellate Division concluded correctly that Mallia's service during the first quarter of 1944 was not localized in New York, for subdivision 2 is determinative only if the employee's "entire service" is localized in one State.

The Appeal Board erred in holding that Mallia's New Jersey service was not employment in New York, because his base of operations for that service was in New Jersey. Clause

---

* "Some Reflections on the Reading of Statutes", Felix Frankfurter, 1947 Assn. of Bar of City of New York, pp. 213, 225.

(a) of subdivision 3 also contemplates consideration of a person's " entire service  *  *  *  both within and without this state ", and the test is operative only if a single base of operations for the entire service is within a State where some of the service is performed. Although the language of the statute might tolerate the board's construction, the purpose of the law, and the explicit direction to consider the entire service, indicate that the issue cannot be resolved by holding that there are several bases of operation.

Since the entire service was not localized in either State, nor was there a single base of operations in either State, we must resort to the test set forth in clause (b) of subdivision 3 — the location of " the place from which such service is directed or controlled ". What does the statute mean by " directed or controlled "? While working in New Jersey, Mallia was under the direct supervision of a superintendent who possessed the power to discharge, and customarily he would remain on such a job until it was completed. The New Jersey superintendents were supervised from the Brooklyn office, and the basic authority in the concern emanated from that point. Requests for manpower were cleared through the Brooklyn office, and payrolls were made up there. To which of these sources of authority does the statute refer, the immediate or the general?

A similar question was considered in *Matter of Burke* (267 App. Div. 127 [3d Dept., 1943]), the only case in either State which has considered this section of the law. There the employee had been an electrician with an opera troupe, which traveled through fifteen States. On tour the company was directed by a manager, who arranged transportation, collected proceeds, paid expenses and salaries, and possessed " plenary powers to handle situations on the road " (p. 129). However, when problems arose he customarily called the New York office, which had planned the tour, arranged the bookings and given the traveling manager detailed instructions before the tour began. In holding the New York company liable for unemployment insurance contributions based upon the earnings of the electrician, the court ruled that the source of direction or control was within New York, and said (p. 130) : " The legal right to direct and control from New York determines. This, the corporation had the right to do."

The language of the court in the *Burke* case (*supra*) was too broad, for the power to direct or control will always remain with the principal executive officers of a corporation. The statute refers to a power which is exercised. The Appellate Division here held that the activities of the general supervisor, emanating as they did from the Brooklyn office, the preparation of payrolls, the control over Mallia's transfer from job to job, constituted such an exercise of the power to direct or control. That conclusion is sound and accords with the purpose of the act.

If it should be held that Mallia's service in New Jersey was directed or controlled from that State, the same considerations which prevail in construing the base of operations test would here compel the conclusion that the statute refers to a single source of direction or control for the entire service. Where there is no single base of operations or source of control in one of the States in which the work is performed, the residence of the employee is to be determinative and the result here would be unchanged.

Since section 511 determines the incidence of the tax upon the employer, as well as the availability of benefits for the employee, appellant urges that an assessment measured in part by Mallia's New Jersey wages will place an undue burden upon interstate and foreign commerce. That burden is described as multiple taxation of the employer upon its payroll for services performed in New Jersey, and appellant relies upon the long line of cases in which the Supreme Court of the United States has condemned unapportioned taxes upon the gross receipts from interstate transactions as repugnant to the Commerce Clause (U. S. Const., art. I, § 8, cl. 3; *Joseph* v. *Carter & Weekes Stevedoring Co.,* 330 U. S. 422, and cases cited therein at p. 427, n. 6). That contention must fail at the outset since appellant is not engaged in either interstate or foreign commerce within the meaning of the Constitution. That its business is carried on in two States, that its employees cross State lines in traveling from one job to another, or that interstate systems of communication are used in directing its operations, cannot transform a local activity into interstate commerce (cf. *Federal Baseball Club* v. *National League,* 259 U. S. 200; and see *Western Live Stock* v. *Bureau of Revenue,* 303 U. S. 250, 253). That the vessels were to be employed in interstate or foreign commerce is immaterial since appellant's activ-

ity had no direct connection with that use (cf. *General Ry. Signal Co.* v. *Virginia,* 246 U. S. 500).

In any event those cases condemning State taxation of interstate commerce are inapposite here, for they rest upon "long-continued judicial interpretation that, without congressional action, the words themselves of the Commerce Clause forbid undue interferences by the states with interstate commerce" (*Joseph* v. *Carter & Weekes Stevedoring Co., supra,* p. 427). Yet in respect of unemployment insurance taxes Congress has said (U. S. Code, tit. 26, § 1606, subd. [a]): "No person required under a State law to make payments to an unemployment fund shall be relieved from compliance therewith on the ground that he is engaged in interstate or foreign commerce, or that the State law does not distinguish between employees engaged in interstate or foreign commerce and those engaged in intrastate commerce." That statute can be read fairly to express a Congressional intent that nondiscriminatory unemployment insurance taxes may be assessed and collected free of objection based upon the Commerce Clause. (See *International Shoe Co.* v. *Washington,* 326 U. S. 310, 315; *Standard Dredging Corp.* v. *Murphy,* 319 U. S. 306, 308.)

To reject appellant's contention is not to concede that the statute has been construed so as to permit multiple taxation of the same employment. The purpose of section 511, and of the uniform legislation, is too clearly opposed to such a result. Appellant has paid taxes to New Jersey based upon Mallia's services, under an administrative interpretation of the New Jersey statute, and now it must contribute to the New York fund. The New Jersey act has not been construed by the courts of that State, nor is New Jersey the only other State with a similar statute (cf. Pa. Stat. Ann., tit. 43, § 753; Conn. Gen. Stat. [1949 Rev.], § 7495). To depart from the manifest purpose of the law in this case, in order to resolve a conflict between administrative construction of the uniform provisions in New York and New Jersey, would not promote uniformity of application by all of the States which have similar statutes.

The order of the Appellate Division should be affirmed, with costs.

Loughran, Ch. J., Lewis, Conway, Desmond, Dye and Fuld, JJ., concur.

Order affirmed.