Bergan, J.
The appellants are the owners of tugs and barges used in the navigable waters of the United States in interstate commerce. The State of New York has, by a final administrative determination, levied against the appellants an unemployment insurance tax based on the wages paid officers and crews of the vessels of appellants for the calendar year 1945. The question that is here is the power of the State to levy the tax. The appeal is from a determination of the Unemployment Insurance Appeal Board.
The case is divisible into two problems of power: (a) whether the power to impose the' tax can rest on an Interstate Maritime Reciprocal Arrangement between New Jersey and New York; and (b) if the reciprocal arrangement does not give authority to levy the tax, whether the power rests elsewhere in the New York statute and is conformable with the constitutional or exercised statutory jurisdiction of the United States.
We are of opinion that the interstate reciprocal arrangement is not a sufficient authorization for the tax in the calendar year 1945. In 1944 the Legislature provided for unemployment taxes upon maritime services under reciprocal State agreements. (L. 1944, eh. 705, eff. June 5, 1944.)
It authorized the Industrial Commissioner to enter into agreements with other States whereby services on vessels in interstate or foreign commerce for a single employer wherever performed shall be deemed performed in New York or in the other State (Unemployment Insurance Law [Labor Law, art. 18], § 536, subd. 2, par. [e]), and such marine service covered by such an agreement was, by the same act, included within the term “ employment ” for the purpose of the tax. (§ 511, subd. 11.)
On October 11, 1945, the New York Industrial Commissioner signed the Interstate Maritime Reciprocal Arrangement with New Jersey. Appellants’ operations are in New York and *639 New Jersey and in Connecticut as well. Under the terms of the agreement the operations of the appellants were such that the tax would be collectible by New York. The Unemployment Compensation Commission of New Jersey did not execute the agreement until February 11, 1946.
The text of the agreement provided in effect that if it was signed before the year when liability in regard to maritime services 11 commences ” under the Federal unemployment tax act, the agreement should apply when such Federal liability did commence; but if signed in a later calendar year it should apply the first day of such calendar year (Interstate Maritime Reciprocal Arrangement, § 7). Liability “ commenced ” under the United States statute for maritime services on July 1, 1946. (U. S. Code, tit. 26, § 1606, subd. [f]; § 1607, subds. [c], [n].)
Had the agreement been signed in that form by both States it would have been effective July 1, 1946. But both signatories to the arrangement undertook to change the effective date provided in its section 7. The New York signatory wrote in above the signature a proviso that notwithstanding section 7, the arrangement shall take effect January 1, 1945, unless liability under the Federal act commences at an earlier date. The New Jersey signatory wrote in a condition that concurrence of New Jersey depended on an effective date of January 1, 1946.
When the New York statute authorized the commissioner to enter into “ reciprocal agreements ” with “ other states ”, the effectiveness of such agreements depended upon mutuality. They had no unilateral application or effect. The quality of reciprocity was the essence of agreement, both if this statute is read literally and upon general principles.
There was no “ meeting of the minds ” in the classic contractual sense between the two States on the New York proposal that the effective date be January 1, 1945, or under some conditions, earlier. New Jersey did not assent to that. Indeed her approval of the agreement at all rested on the condition that it should be effective January 1, 1946. Therefore, the agreement was without effect until the earliest date at which both States agreed it should be operative. It then became reciprocal and it then became an agreement. Therefore, the reciprocal arrangement is not an authorization to levy the tax for the calendar year 1945.
New York has, however, authority independently of the reciprocal agreement to impose the tax on appellants. Within the term “ employment ”, as used in the New York statute for the purposes of tax or contributions under the Unemployment *640 Insurance Law, is work performed within and without the State if the base of operations is in New York, or if not here, and there is no base of operations in another State, where the work is directed or controlled in New York. (§ 511, subd. 3, pars, [a], [b].) The appeal board has found on substantial evidence that some of the services were rendered in New York; that there is no “ base of operations ” in any State, and all the services are directed and controlled in New York.
Appellants argue that this legislative standard for taxation transcends the power of the State because a tax on employment based on place of control without regard to where the services are performed could be imposed beyond the territorial jurisdiction of the State. A considerable stress is placed by appellants on the language of the Court of Appeals in Matter of Cassaretakis (Miller) (289 N. Y. 119 [1942]), which first sustained the power of the State to impose unemployment insurance taxes on marine employments.
The language “ provided the whole or greater part of such employment is performed within this State ” was used by the court (p. 125) but this was not a judicially imposed condition upon the power of the State to levy the tax. The court was merely using the definitive language of the statute as it then read. (Unemployment Insurance Law, § 502, subd. 1, par. [a], as added by L. 1935, ch. 468.) That definition is now repealed (L. 1944, ch. 705), and the present more precise and careful definition substituted.
Neither the decision in the Court of Appeals nor that in the Supreme Court affirming it (sub non. Standard Dredging Corp. v. Murphy, 319 U. S. 306), turned upon the narrow terms of the definition contained in the 1935 statute, which made the tax depend upon whether the whole or a greater part of the services were performed within the State. Both cases rested on annunciation of very broad principles. “ There is no constitutional objection to coverage of maritime employments by the Unemployment Insurance Act of New York State.” (Finch, J., in the Court of Appeals, p. 130.)
In the Supreme Court the purported conflict of the statute with the exclusive admiralty jurisdiction of the United States courts under the Constitution was found inadmissible. “ We hold that nothing in Article 3, § 2 of the Constitution places this tax beyond the authority of the State.” (Black, J., p. 310.) Congress, the court held, could have pre-empted this area of taxation; but not having done so, the State was free to tax (p. 309).
*641 The Court of Appeals has regarded the place of “ direction or control ” of the work, one of the definitions of employment under paragraph (b) of subdivision 3 of section 511, as placing no burden on interstate commerce where work is largely performed in another State. (Matter of Mallia [Corsi], 299 N. Y. 232 [1949].) It seems to us there is also no invalid interference with the maritime jurisdiction of the United States by this definition of taxable employment.
The decision of the Unemployment Insurance Appeal Board should be affirmed, with costs.
Foster, P. J., Heeeernan, Brewster and Coon, JJ., concur.
Decision of the Unemployment Insurance Appeal Board affirmed, with costs.