**782**

COMMONWEALTH of Kentucky ex rel.
DIVISION OF UNEMPLOYMENT
INSURANCE, Appellant,

v.

Harry B. GOHEEN, doing business as
Goheen Electric Company, Appellee.

Court of Appeals of Kentucky.

Nov. 29, 1963.

Paul E. Tierney, Clarence E. Powell,
Forest Smith, Frankfort, for appellant.

E. Gaines Davis, Jr., and Smith, Reed &
Leary, Frankfort, for appellee.

STEWART, Judge.

Appellee, Harry B. Goheen, d/b/a Go-
heen Electric Company, was and is an elec-
trical contractor having his principal office
in Huntington, West Virginia. In April,
1956, appellee was awarded a sub-contract
to do electric work on a building being con-
structed in Floyd County. The work was
completed in August, 1957.

Appellee employed all the labor used
through the union hiring hall in Hunting-
ton. Some of these employees were resi-
dents of West Virginia and some were resi-
dents of Kentucky. All of these workers,
regardless of residence, were paid for travel
to and from Huntington. All wages paid
by appellee to all of his employees, regard-
less of the residence of the employee or the
location of the work performed, were re-
ported to the West Virginia Department of
Economic Security for the purpose of
assessment of contributions for unemploy-
ment compensation.

Appellant brought this action, averring
appellee owes contributions to the Unem-
ployment Insurance Fund on all wages he
paid his employees (except certain "key"
employees) for services performed by them
on the Floyd County project, amounting to
$1312.44, plus additional penalties. The
trial court found all the employees in ques-
tion were West Virginia employees within
the meaning of KRS Chapter 341, and their
work under the conditions mentioned was
temporary or transitory in nature. He also
ruled that, as residence is not a condition of
eligibility for unemployment insurance pay-
ments, such benefits were available to ap-
pellee's employees in West Virginia. Fur-
ther, it was determined that, by reporting
to the West Virginia Department of Eco-
nomic Security, appellee had done all that
could reasonably be expected and that to
require him to report the same wages in
Kentucky could result in double taxation.

It was stipulated the only other work done by appellee in Kentucky was in 1949, at which time he made unemployment compensation contributions to appellant on wages paid in connection therewith. Appellee failed to file the application for termination of coverage, required by KRS 341.250, when he completed that contract and left the state. All parties agreed that appellee was a subject employer in Kentucky and was obligated to make contributions, if the wages he paid were advanced for "covered employment."

The provisions of KRS 341.050, which we believe are determinative of the question raised, read in part:

"(1) As used in this chapter, unless the context clearly requires otherwise and subject to other provisions of this section, 'covered employment' means service, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied in which the relationship of the individual performing such service and the employing unit for which such services are rendered is, as to those services, the legal relationship of employer and employe.

"(2) 'Covered employment' includes a worker's entire service performed within or both within and without this state if: (a) The service is localized in this state; * * *."

\* \* \* \* \* \*

"(4) Service shall be deemed to be localized within a state if·

"(a) The service is performed entirely within such state; * * *."

Appellee has not furnished us with a brief and, since appellant has filed its brief in time, we are electing to dispose of this case in accordance with provisions (1) and (2) of RCA 1.260(c), which are: " * * * (1) [a]ccept the appellant's statement of the facts and issues as correct; or (2) reverse the judgment if appellant's brief

reasonably appears to sustain such action; * * *."

Appellant argues that the statute makes the location of employment the chief criterion of coverage. It asserts work is "localized" in Kentucky when it is performed within this state and, when so localized, it is "covered employment" under the law of this state.

In 48 Am.Jur., Social Security, Unemployment Insurance, etc., sec. 15, pocket part, p. 51, it is stated:

" * * * As summarized, the tests prescribed in the uniform provision of this kind appearing in many of the Unemployment Compensation Acts have been, in essence—first, the place where work is 'localized'; second, the situs of 'base of operation'; third, the situs of 'place from which such service is directed or controlled'; and fourth, the situs of employees 'residence.' Under statutes of this character, there is agreement that the tests are to be applied consecutively, in the indicated order of preference, beginning with the test of 'localization' of the work."

An annotation in 9 A.L.R.2d p. 647–648, explains the same tests and states they are to be used consecutively and preferentially, as outlined above.

Kentucky, and an overwhelming majority of the states, have enacted the uniform statute, of which the foregoing is a portion, for the treatment of multistate workers. The interpretation of this statute is discussed in 49 Columbia Law Review, p. 993–1000, in an article entitled "Unemployment Compensation for Multistate Workers." The author says (p. 993–994):

"A worker is within the scope of a state's unemployment insurance statute only if his services constitute 'employment' as defined therein. State legislatures have, therefore, attempted to simplify administration of benefits to multistate workers by adopting a uni-

form definition of 'employment.' Grounded on the premise that one, and only one, state should be responsible for coverage, the definition is designed to select for responsibility that state in which the individual is most likely to become unemployed and seek work."

It appears the agreed facts in this case present an employing unit which meets all of the conditions of the Unemployment Compensation Act necessary to require it to pay in Kentucky the tax levied. By simply reading the pertinent portion of KRS 341.-050, quoted above, it is clear the chief criterion of coverage is the location of the employment. Where, as here, all the work is performed within this state it is undoubtedly "localized" in this state and constitutes "covered employment" under the law of this state. The location of the employer's place of business is not material in determining whether the services performed for him are covered by the Act because, if the services rendered by an employee are localized in the state, there is no need for considering this factor or, indeed, the other criteria for coverage hereinbefore mentioned.

The trial court concluded that to require appellee to report the employee's earnings to Kentucky, after having already reported them to West Virginia, could result in double taxation. Such a result was reached in Re Mallia, 299 N.Y. 232, 86 N.E.2d 577, 9 A.L.R.2d 636. The court in that case pointed out that payments had been made to New Jersey under an administrative ruling when in fact, according to the New York court's holding, such payments should have been made to New York. In deciding that the employer must make payments in full in New York, even though payments were made in New Jersey, based upon the services of the employee there, the New York court said (86 N.E.2d 582, 9 A.L.R.2d 645): "To depart from the manifest purpose of the law in this case, in order to resolve a conflict between administrative construction of the uniform provisions in New York and New Jersey, would not promote uniformity of application by all of the States which have similar statutes." The case at bar is one where the employer proceeded at his own risk in making payments, if in fact he did so, under an administrative ruling.

Wherefore, the judgment is reversed with directions to enter a new one in conformity with this opinion.