WALCO LEASING, Relator,

v.

Anthony V. BILICH, Philip R. Thieling, Department of Economic Security, Respondents.

No. CX-85-2082.

Court of Appeals of Minnesota.

March 11, 1986.

Considered and decided by POPOVICH, C.J., and LANSING and FORSBERG, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

This matter was first heard by a Department referee on December 16, 1982, based upon an appeal by respondents from a determination that their services for relator Walco Leasing did not constitute covered "employment" under the Minnesota Economic Security laws. The referee issued a decision in favor of respondents, and Walco Leasing appealed to a Commissioner's representative, who remanded for further evidence, due to the fact that Walco Leasing had not been represented at the first hearing.

A second hearing was held on July 20, 1983, following which the referee reversed his original decision. The respondents appealed and a Commissioner's representative again remanded, this time because no transcript was made of the second hearing.

A third hearing was held on October 2, 1984, and the referee took further testimony from both parties. The referee's conclusion that an employer-employee relationship did not exist between the parties was appealed by respondents, and a Commissioner's representative reversed, determining that Walco Leasing was the respondents' employer and that their employment was covered under the Minnesota Economic Security laws. Walco Leasing has requested review by writ of certiorari. We affirm.

## FACTS.

Donald D. Ousky, Minneapolis, for Walco Leasing.

Douglas P. Johnson, Legal Aid Society of Northeast Minnesota, Duluth, for Anthony V. Bilich.

Gregory Evenson, Moose Lake, for Philip R. Thieling.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Dept. of Economic Sec.

Walco Leasing was incorporated in 1980 in the state of Wisconsin. Thomas Walczynski was the sole stockholder, and leased his own trucks to the corporation. Walco Leasing, in turn, leased tractors, trailers and drivers to carriers with operating authority from the Interstate Commerce Commission. Respondents were hired by Walco Leasing as drivers, and were paid a percentage of the revenue which Walco Leasing received from its arrangements with

authorized carriers. Walco Leasing's yard was in Superior, Wisconsin.

Thomas Walczynski was also the safety director and a ten percent shareholder of Walco Transport, Inc. His parents, Joseph and Mary Lou Walczynski, owned the remaining 90 percent of Walco Transport, Inc. Walco Transport was located in Duluth, Minnesota, and was a transport company with ICC operating authority.

Walco Transport shared its offices and an officer manager with Twin Ports Dispatch, a broker for Walco Transport and other trucking organizations. Twin Ports Dispatch was owned by Mary Lou Walczynski and was operated by Mary Lou and Joseph Walczynski. Twin Ports Dispatch was the broker which respondents used to obtain loads. Respondents carried loads both within and without Minnesota.

## ISSUES

1. Did Walco Leasing provide "employment" to respondents within the purview of the Minnesota unemployment compensation laws?

2. Did the Commissioner's representative erroneously disregard a stipulation by the parties concerning certain facts read into the record by the referee?

## ANALYSIS

*1. Minnesota Employment.*

■ Minn.Stat. § 268.04, subd. 12(2) (1984) describes when the term "employment" for purpose of Minnesota's unemployment compensation statute includes service performed within and without Minnesota.

(2) The term "employment" shall include an individual's entire service, performed within or both within and without the state if (a) the service is localized in this state; or (b) the service is not localized in any state but some of the service is performed in this state and (1) the base of operations, or, if there is no base of operations, then the place from which such service is directed or controlled, is in this state; (2) the base of operation of place from which such service is directed or controlled is not in any state in which some part of the service is performed, but the individual's residence is in this state.

(3) Service shall be deemed to be localized within a state if (a) the service is performed entirely within such state; or (b) the service is performed both within and without such state, but the service performed without such state is incidental to the individual's service within the state, for example, is temporary or transitory in nature or consists of isolated transactions.

(4) The term "employment" shall include an individual's service wherever performed within the United States or Canada, if

(a) such service is not covered under the unemployment compensation law of any other state or Canada, and

(b) the place from which the service is directed or controlled is in this state.

Both parties and the Commissioner's representative agree that respondents' service was not localized in Minnesota, since they carried loads outside Minnesota and traveled to Superior, Wisconsin to pick up their tractors and trailers from Walco Leasing. Further, it is undisputed that Walco Leasing, Inc. was respondents' employer, rather than Walco Transport or Twin Ports Dispatch. Therefore, it must be determined whether Walco Leasing's "base of operations" was in this state or, if there was no base of operations, whether respondents' service was directed or controlled from within this state.

"Base of operations" has been defined by the Department of Economic Security as:

[T]he place, usually permanent in nature, from which the employee starts his work, to which he customarily returns, and to which the employer may direct instructions to the employee. A branch office of the employer or the place of residence of the employee could be a base of operations.

Minn.R. 3315.1800, subpt. 2 (1985). Although no judicial interpretation in Minnesota supplements this definition, caselaw from other jurisdictions is instructive. For example, in *In Re Dmythreshin*, 12 A.D.2d 674, 208 N.Y.Supp.2d 335 (1960) an employee's base of operations was held to be in New York, despite the fact that he worked at a plant in New Jersey, since he was hired in New York, all written instructions came from New York, he was in almost constant touch with the New York office by telephone for instructions, and at times he had to go to the New York office for written plans and instructions.

Factors to be considered in determining the meaning of "base of operations" were outlined in *Heller v. International Transport Inc.*, 94 Idaho 91, 481 P.2d 602 (1971):

Factors such as the place of beginning the service for which compensation is being paid, place of resupply of materials needed in the service, if any, place of repair of the machinery used in the service, the source of orders or directions for the services rendered and the permanency of any of these places if they exist should be considered in determining if there is a base of operations and where it is located.

*Id.* at 604–05, 94 Idaho 91. In *Claim of Mallia*, 299 N.Y. 232, 86 N.E.2d 577 (1949) the New York court indicated that the purpose of a similar statute was "to bring within the scope of the New York act those employees who work both in New York and one or more other States when the most substantial contracts (sic) of the employment are in New York." *Id.* at 238–39, 86 N.E.2d at 580.

In the present case the Commissioner's representative found that although the respondents were employees of Walco Leasing, Inc., their base of operations was in Minnesota. The representative noted that although respondents were paid by Walco Leasing, Inc., they often obtained their checks from the office manager at the Wal-

co Transport/Twin Ports Dispatch office. The Commissioner's representative also made the following findings linking Walco Leasing's base of operations to Minnesota:

The claimants filled out applications and were hired at the office of Walco Transport (and thus the office of Twin Ports Dispatch) at 3112 Truck Center Drive, Duluth, Minnesota. At all periods pertinent to the claims for benefits herein, the drivers (the claimants) reported to the office of Walco Transport (the same office as Twin Ports Dispatch) to receive instructions as to loads to be carried, routes involved, and similar information prior to departure. Having received the necessary instructions, the drivers would then proceed to 219 Grand Avenue, Superior, Wisconsin to pick up the trucks and trailers which they were to operate.[1] After picking up the trucks and trailers at Superior, Wisconsin, the claimants would proceed to pick up cargo. The loads originated from Duluth. After the claimants delivered their cargo to various places throughout the nation, the claimants would then contact Twin Ports Dispatch (the same offices as Walco Transport) for further instructions regarding the pick up of cargo on the return trip. If no cargo was available for dispatch, the claimant would check the "call board" at a nearby truck terminal to determine what cargo might be available. If returned cargo was located, the claimants would again contact Twin Ports Dispatch (the same offices as Walco Transport) for approval to transport the cargo.

In a memorandum, the representative explained further:

The only connection this whole case has with the State of Wisconsin is that it was there that the vehicles were stored overnight. The claimants always commenced their loads from Minnesota. The claimants returned to Duluth, Minnesota. That is where the claimants started and

---

**1.** This finding contradicts the claim by relator that respondents first went to the yard in Wisconsin to pick up their tractors and trailers and *then* went to the Minnesota office of Walco Transport/Twin Ports Dispatch. The record indicates that they received instructions from Walco Transport/Twin Ports Dispatch before going to Wisconsin to get the tractors or trailers.

ended. The mere fact that they stored the vehicles in Wisconsin overnight is not of particular consequence.

The scope of review of the Commissioner's decision regarding the existence of employment is defined by the Administrative Procedures Act. Minn.Stat. § 268.12, subd. 13(4) (1984). We are therefore limited to determining whether the Commissioner's decision was rendered in violation of constitutional provisions, in excess of the statutory authority or jurisdiction of the agency, or upon unlawful procedure, or whether the decision was affected by other error of law, unsupported by substantial evidence in view of the entire record submitted, or arbitrary or capricious. Minn. Stat. § 14.69 (1984).

Here, the Commissioner's conclusion that Walco Leasing's base of operations was in Minnesota is supported by the representative's findings noted above which, in turn, are supported by substantial evidence in the record. As indicated by the administrative rule and caselaw from other jurisdictions, the focus of the term "base of operations" is upon the *employee* —i.e. where the employee receives his directions, where he starts and ends his work, where he is hired, etc. Although Walco Leasing Inc.'s yard was located in Wisconsin, its true base of operation was located at the offices of Walco Transport/Twin Ports Dispatch.

The statute also provides that if there is *no* base of operations, "Minnesota employment" is determined by whether the place from which the employee's service is directed or controlled is in this state. Even if we were to determine in this case that Walco Leasing did not have a base of operations in either Wisconsin or Minnesota, the direction or control test would place respondents' employment in Minnesota. As the Commissioner's representative found:

> First of all, Walco Leasing used Walco Transport (principally) to operate the vehicles. Walco Transport, Inc. was at all times Minnesota based. The claimants received their directions as to what loads to pick up, where to drive, what routes to take, from persons in Minnesota. Twin Port Dispatch was acting as an agent in providing the drivers with "general" direction and control. It is the judgment of this Representative of the Commissioner that the "general" direction and control over the claimants (drivers) was in the State of Minnesota. It is noted that the claimants testified they often picked up their checks in Minnesota, from Thomas Walczynski, at the offices of Walco Transport (also the offices of Twin Ports Dispatch) at 3112 Truck Center Drive.

Again, these findings are supported by the record.

Finally, even if Walco Leasing's base of operation had been in Wisconsin, our statute would allow respondents to recover since the direction and control emanated from this state:

> (4) The term "employment" shall include an individual's service wherever performed within the United States or Canada, if
>
> (a) such service is not covered under the unemployment compensation laws of any other state or Canada, and
>
> (b) the place from which the service is directed or controlled is in this state.

Minn.Stat. § 268.04, subd. 12(4) (1984). Here it is uncontroverted that respondents were denied unemployment compensation under Wisconsin's laws.

*2. Stipulation.*

■ As indicated above, Walco Leasing was not represented at the first hearing before the referee, and the matter was remanded for a second hearing, at which time Walco Leasing submitted its evidence. When the second decision by the referee was appealed, the matter was again remanded, this time because the second hearing could not be transcribed. Upon remand, instead of conducting an entirely new rehearing, the referee read his prior findings into the record and asked the parties to further explain or rebut those findings as desired. The parties specifically agreed to this procedure.

Upon appeal, however, the Commissioner's representative determined that "[n]either party particularly stipulated to the facts as found * * *." Walco Leasing contends that this determination is untrue and leaves it "without most of its critical evidence on the record."

A review of the findings which were read into the record by the referee reveals that most of the facts therein are undisputed and are also incorporated in the decision of the Commissioner's representative. Also, as the Commissioner's representative noted, despite the unusual procedure used by the referee, the parties were not restrained from presenting additional evidence and cross-examining witnesses as much as they desired.

The only facts which were not addressed by the Commissioner's representative involved Walco Leasing's alleged payment of unemployment compensation tax to Wisconsin. This finding was the subject of further testimony by the parties which the referee subsequently addressed. The transcript of the third hearing demonstrates that if Walco Leasing had made unemployment tax payments to the State of Wisconsin for its drivers, those payments were returned, since Wisconsin does not recognize a company such as Walco Leasing as an employer, but, rather, has decided that a driver is the employee of a carrier holding ICC authority. The referee following the third hearing found:

> [Walco Leasing] attempted to report all of its employees to the State of Wisconsin for unemployment insurance purposes, but that state accepted unemployment compensation taxes only for the employer's mechanics. The employer's drivers, such as the claimants, were not considered to be the employer's employees under the Wisconsin law. They were considered to be employees of the authorized carriers for whom they performed truck driving services.

In light of the above, the failure of the Commissioner's representative to specifically accept as uncontroverted the referee's

findings which were read into the record resulted in no prejudice to Walco Leasing.

**DECISION**

The decision of the Commissioner's representative is affirmed.