**DISTRIBUTION SERVICES, INC., Relator,**

v.

**COMMISSIONER OF JOBS AND TRAINING, Respondent.**

No. CX–88–1612.

Court of Appeals of Minnesota.

Jan. 24, 1989.

Review Denied April 19, 1989.

Steven B. Goff, Bye, Krueger & Goff, River Falls, Wis., for relator.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by CRIPPEN, P.J., and RANDALL and BOWEN *, JJ., without oral argument.

## OPINION

BOWEN, Judge.

The Commissioner of Jobs and Training determined that relator Distribution Services, Inc. (DSI) was required to report the

_____

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. VI, § 2.

wages of certain employees to Minnesota for purposes of Minnesota unemployment compensation law. DSI petitioned for a writ of certiorari, contending that it should report only to Wisconsin. We affirm.

### FACTS

Distribution Services, Inc. is a Wisconsin corporation, incorporated in 1981, which hires drivers and leases them to trucking companies. DSI's corporate headquarters are located in Hudson, Wisconsin. Approximately 90 percent of DSI's drivers are leased to Lenertz, Inc., an interstate carrier, and DSI was established for the primary purpose of supplying drivers to Lenertz. Lenertz has a terminal in Inver Grove Heights, Minnesota, as well as at a number of other locations in other states. The president of DSI is the executive vice president of Lenertz.

DSI recruits, hires and leases drivers at its corporate headquarters in Wisconsin. New drivers receive a three-day orientation at that location and return each year for a two-day orientation session. DSI administers benefits, maintains personnel records, verifies employment, and issues checks from the Wisconsin office.

On December 23, 1987, there were approximately 200 drivers on DSI's payroll. Seventy-three resided in Wisconsin, 24 in Minnesota, 17 in Michigan, 16 in Iowa, 16 in Illinois, 12 in Indiana, and the remainder in 15 other states.

The vice president of DSI has an office at the corporate headquarters in Wisconsin and at the Lenertz terminal in Inver Grove Heights. He has most of his contacts with the DSI drivers who work out of the Lenertz terminal at Inver Grove Heights at his office there, addressing such matters as discipline. DSI drivers receive their day-to-day instructions from Lenertz and other trucking firms whose equipment they operate. The drivers drive under Lenertz's authority, and Lenertz provides the dispatch, obtains the loads, and owns the equipment.

The Commissioner's representative found that DSI has four classes of driver employees. The first consists of those who drive exclusively in the Twin Cities area, and who pick up their equipment from the Inver Grove Heights terminal and return it to that location each day.

The second class consists of those who drive throughout the continental United States. While they may reside in Minnesota, Wisconsin, or some other state, they pick up their equipment at the Lenertz terminal in Inver Grove Heights and return it to that location at the end of a trip. They receive instructions for day-to-day driving activities from Lenertz at the Inver Grove Heights terminal.

The third class consists of those who drive throughout the continental United States but pick up their equipment at Lenertz's terminals located outside Minnesota and return their equipment to that same terminal.

The fourth class consists of those few drivers who are leased to trucking firms other than Lenertz.

In 1983 and 1984, both Minnesota and Wisconsin determined through various drivers' claims that DSI was not an employer subject to their unemployment laws as to those drivers. From 1983 through 1985, DSI paid only federal unemployment tax; it did not pay state unemployment taxes to either Wisconsin or Minnesota because of uncertainty as to which state to pay.

On May 15, 1985, Minnesota clarified its position. It stated in a letter to DSI:

> Information gathered by this Department's field audit staff discloses that a number of your trucks are based at a terminal in Inver Grove Heights, Minnesota. It is the determination of this Department that *your Inver Grove Heights terminal is serving as a base of operations for your multi-state workers who are assigned to trucks domiciled at that location* and that these workers fall under Minnesota jurisdiction for unemployment tax purposes.

(Emphasis added). Because DSI was unable to identify the employees assigned to trucks based at various terminals, Minnesota and Wisconsin reached a mutual agreement that for 1983 and 1984, DSI should

report its employees to their state of residence. For 1985 and subsequent years, DSI was required to report its employees to the state serving as its base of operations. On January 1, 1986, DSI made the unilateral decision to begin paying state unemployment taxes on wages of all of its employees to the State of Wisconsin.

After various proceedings, a hearing was held on January 12, 1988 before a referee who took evidence and issued a determination which affirmed the Department's May 15, 1985 determination. DSI appealed to the Commissioner and the decision of the referee was affirmed. DSI petitioned for a writ of certiorari and the matter is before us for review.

## ISSUES

1. Is Minnesota precluded from determining that DSI is an employer which must report the wages of certain classes of employees to Minnesota for purposes of the unemployment compensation law, because such employees arguably must be reported to Wisconsin?

2. Does DSI have employees whose employment is "localized" in Minnesota and employees whose "base of operations" is in Minnesota, so that DSI must report this employment to Minnesota for purposes of the unemployment compensation law?

## ANALYSIS

1. DSI argues that because of recent changes in Wisconsin law, all of its employees' services constitute covered employment in Wisconsin. *See* 1987 Wis. Act 255. It asserts that it is thus unnecessary for Minnesota to intervene, and that to require it to report employees to each state would be administratively burdensome.

■ The determination of which state should assess taxes upon the employer and pay benefits to the employee depends upon in which state it is most likely that the individual will become unemployed and seek work. *In re Mallia*, 299 N.Y. 232, 238, 86 N.E.2d 577, 580 (1949). This determination is made by applying a number of tests, namely, localization, location of base of operations, the source of direction or control, and the residence of the employee. *Id.* at 239, 86 N.E.2d at 580; Minn.Stat. § 268.04, subd. 12. Thus, rather than looking to another state's laws, as DSI urges, this court must focus on the employee, and determine whether under Minnesota law that employee is engaged in covered employment.

■ Relator moved to supplement the appellate record to include two "initial determinations" from the Wisconsin Department of Industry, Labor and Human Relations, dated September 15, 1988. This court will not take judicial notice of a matter which occurred subsequent to the proceedings below, with the possible exception of an order which renders the proceedings on appeal moot. *See Laff v. Laff,* 161 Minn. 122, 123, 200 N.W. 936, 937 (1924). The determinations do not make this matter moot. We decline to consider the "initial determinations" with which DSI seeks to supplement the record.

2. This court may review the Commissioner's decision by a writ of certiorari in accordance with Minn.Stat. ch. 14. Minn. Stat. § 268.12, subd. 13(4) (1986). DSI asserts that the record, when viewed as a whole, does not support the decision. Minn.Stat. § 14.69(e) (1986).

■ The Commissioner's representative determined that wages paid to two classes of employees were reportable to Minnesota for purposes of the unemployment compensation law. The first class consists of those who have "localized employment," drivers who drive exclusively, or nearly exclusively, in the Twin Cities area. Such employment is clearly covered under Minnesota law. Minn.Stat. § 268.04, subd. 12(2), (3) (1984); Minn.R. 3315.1700 (1985); *see Stevens v. Minnesota Division of Employment & Security,* 207 Minn. 429, 431–32, 291 N.W. 890, 891 (1940).

■ The second and more vigorously contested issue is the determination that the base of operations for the second class of employees is in Minnesota, and that DSI is a liable employer in Minnesota for these employees. It was undisputed that these

employees' employment was not localized in Minnesota.

The Commissioner's representative addressed whether the base of operations for the second class of employees was in Minnesota. The statute provides in relevant part that:

The term "employment" shall include an individual's entire service, performed within or both within and without this state if * * * (b) the service is not localized in any state but some of the service is performed in this state and (1) the base of operations, or, if there is no base of operations, then the place from which such service is directed or controlled, is in this state; (2) the base of operations or place from which such service is directed or controlled is not in any state in which some part of the service is performed, but the individual's residence is in this state.

Minn.Stat. § 268.04, subd. 12(2) (1984).

The rule addressing multi-state employment provides:

If an individual's services are not localized in any state and some services, other than those determined to be incidental, temporary, transitory, or isolated transactions, are performed in Minnesota and the base of operations is in Minnesota, the employee's entire services are reportable to Minnesota. "Base of operations" means the place, usually permanent in nature, from which the employee starts his work, to which he customarily returns, and to which the employer may direct instructions to the employee. A branch office of the employer or the place of residence of the employee could be a base of operation.

Minn.R. 3315.1800, subpt. 2 (1985).

▰▰ It is not the contract of employment which determines which state may collect unemployment tax, but instead "the place where the employee's services are performed, directed and controlled * * *." *Stevens*, 207 Minn. at 432, 291 N.W. at 891. The focus of the "base of operations" test is upon the employee. *Walco Leasing v. Bilich*, 383 N.W.2d 374, 378 (Minn.Ct.App. 1986).

The Commissioner's representative considered the following facts in his determination:

[The drivers] reside in Minnesota and other nearby states. However, they pick up their equipment, tractors and trailers at the Lenertz terminal in Inver Grove Heights and return them to that same location at the end of their trips. In addition, they receive their day-to-day driving instructions from personnel at the Lenertz terminal located in Inver Grove Heights, Minnesota. * * * The employer's representative testified that drivers who live within a 100 mile radius of the Inver Grove Heights terminal pick up their equipment and return it to that terminal. The evidence further shows that they receive their dispatching instructions from personnel at that terminal. Also the evidence shows that the vice-president of the above-named employer has office space located at that terminal, which he uses on various occasions to meet with the drivers in order to discuss "payroll problems, or questions" or other concerns which the drivers may have. He further testified that he was at that location "at least two or three days a week."

Relying on *Walco*, the Commissioner's representative determined that the base of operations for this class of employees was in Minnesota.

DSI contests the determination and argues that the record as a whole does not support the finding. It asserts that the record instead shows the base of operations is in Wisconsin because DSI has over 225 employees, with a payroll of over $4.5 million per year, has leased a new building in Hudson, has a branch in Green Bay, has several office staff and clerical workers in Hudson, and keeps drivers' records in Hudson. Drivers are hired, fired, and receive orientation at Hudson. The drivers call in directly to DSI with problems and obtain authorization for emergency repairs at Hudson or other designated service centers. In contrast, it argues, in *Walco* all drivers were based in Minnesota, so that as a result of the decision, Walco could still

report directly to one state. Further, in *Walco*, Wisconsin had rejected Walco's payments; here, Wisconsin has accepted DSI's payments since 1986.

While the facts cited by DSI are accurate, they do not contradict the facts upon which the Commissioner's representative relied. Further, the distinctions it makes with *Walco* are not determinative. The representative's decision was supported by the record, and the facts he found support the conclusion that the base of operations for the second class of employees was in Minnesota.

The Commissioner's representative also concluded that the decision of the referee was consistent with the Department's May 15, 1985 determination that the base of operations for the multi-state workers assigned to trucks domiciled at the Inver Grove Heights terminal was that terminal. The representative noted that settlement pursuant to Minn.Stat. § 268.16 might be possible. DSI argues that Minnesota may not seek retroactive payments. The issue of payments which DSI might be required to make to Minnesota is not before this court. It will be ripe for determination if and when the Department makes a decision as to the amount owed. *See* Minn.Stat. § 268.16 (1986).

### DECISION

The decision of the Commissioner's representative is affirmed.