No. 93-606

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

S.E.A. TRUCKING

 Petitioner and Appellant,

-v-

THE STATE OF MONTANA, by and through
the Department of Labor and the Board
of Labor Appeals, and THE MONTANA
DEPARTMENT OF LABOR AND INDUSTRY

 Respondents and Respondents

**FILED**

DEC 22 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

 For Appellant:

  Patrick G. Frank and W. Carl Mendenhall, Worden,
Thane & Haines, Missoula, Montana

 For Respondent:

  Daniel B. McGregor, Montana Department of Labor &
Industry, Helena, Montana

 For Amicus State Compensation Mutual Insurance Fund:

  Stephen M. Frankino, Hughes, Kellner, Sullivan &
Alke, Helena, Montana

Submitted on Briefs: August 25, 1994

Decided: December 22, 1994

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from a Fourth Judicial District Court, Missoula County, order on a petition for judicial review, affirming the Board of Labor Appeals' decision that SEA's base of operations has been in Missoula, Montana, since June of 1988, and hence, SEA should have been reporting its employees' wages to the State of Montana for the purpose of unemployment insurance. We affirm.

The sole issue on appeal is whether the District Court correctly affirmed the Board of Labor Appeals' decision that SEA's base of operations was in Missoula, Montana, and therefore, the corporation should have been reporting its employees' wages and paying unemployment insurance to the State of Montana.

FACTUAL AND PROCEDURAL BACKGROUND

SEA, a motor carrier, was incorporated in July of 1988 in the State of Wyoming. Robert Evers (Evers), of Casper, Wyoming, owned 51% of the corporation and Stan Spencer (Spencer), of Missoula, Montana, owned 49% of the corporation. SEA, a non-licensed carrier leased 20 over-the-road hauling trucks from Allstate, a Minnesota company, and then re-leased the trucks to Bitterroot International Systems, Inc. (Bitterroot), a motor carrier solely owned by Spencer. Bitterroot is a federally licensed motor carrier with its headquarters in Missoula, Montana. SEA leased exclusively to Bitterroot but Bitterroot had lease agreements with other individual carriers in addition to SEA.

In July and August of 1990, because of a concern that proper unemployment insurance coverage was not being provided to SEA

2

employees, SEA was audited by the Unemployment Insurance Division of the Department of Labor and Industry (DOI) of the State of Montana to determine whether drivers and their wages should be reported to the state of Wyoming, as SEA claims, or the state of Montana. On September 7, 1990, the Department determined that the wages of SEA's drivers should have been reported in Montana under Bitterroot's account because the DOLI had determined that SEA drivers were Montana workers employed by Bitterroot. SEA requested a redetermination of the decision, and on December 10, 1990, the initial determination was sustained.

SEA appealed this determination to the Department's Hearing Examiner who heard the case on May 21, 1991, and on January 29, 1992, issued his decision reversing the initial determination that SEA's drivers should have been reported as Bitterroot employees, but he sustained the determination that SEA should have been reporting their drivers' wages to Montana, rather than Wyoming.

This decision was appealed to the Department's Board of Labor Appeals (Board), and on March 30, 1992, the Board adopted the Hearing Examiner's Findings and Conclusions. SEA sought judicial review in the Fourth Judicial District Court of the Board's decision. The District Court affirmed the decision of the Board in an Opinion and Order on the Petition for Judicial Review on October 22, 1993. In affirming the Board's affirmance of the Hearing Examiner's Findings of Fact, the District Court particularly addressed and subsequently modified certain findings which SEA contended were either irrelevant or not supported by the evidence.

3

These findings, as amended by the District Court, state:

> 4. SEA rented a small administrative office/shop facility in Casper, Wyoming where Evers and his secretary worked. The firm also rented space from the Bitterroot International Systems Complex in Missoula.... All trucks were dispatched...in Missoula. SEA assigned a manager to the Missoula terminal to supervise...the drivers.... The Missoula manager was able to conveniently confer with Spencer since their offices were located in the same building.
>
> 5. The terminal manager advertised job openings, interviewed and hired the drivers out of Missoula. Due to the geographical location of the Missoula terminal, nearly all of the drivers were Montana residents. According to the 1989 W-2 forms issued by SEA, 146 out of 160 drivers on the payroll were Montana residents with Montana drivers licenses.
>
> 6. SEA processed its payroll records in its Montana facility.... While business files were kept at the Casper office, most, if not all, such data was a duplication of records compiled and maintained in the Missoula terminal.

SEA now requests that this Court review the decision of the Hearing Examiner and the subsequent reviews of that decision, including that of the District Court.

STANDARD OF REVIEW

The correct standard of review in the instant case is set out in § 39-51-2410(5) and (6), MCA, and provides:

> (5) In any judicial proceeding under 39-51-2406 through 39-51-2410, the findings of the board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive and the jurisdiction of said court shall be confined to questions of law. . . .
> (6) An appeal may be taken from the decision of the district court to the supreme court of Montana in the same manner, but not inconsistent with the provisions of this chapter, as is provided in civil cases....

We have stated that:

> '[s]upported by the evidence' means supported by substantial evidence, which is 'something more than a

4

scintilla of evidence, but may be less than a preponderance of the evidence.'

Potter v. Dept. of Labor and Industry (1993), 258 Mont. 476, 479, 853 P.2d 1207, 1209. (Citation omitted.) Moreover, in Potter, we stated that "the District Court must limit its review of the Board's findings to a consideration of whether they are supported by substantial evidence, and the same standard applies to this Court. With regard to questions of law, however, our task is to determine whether the agency's interpretation of the law is correct." Potter, 853 P.2d at 1209. (Citations omitted.)

Further, we have stated that:

> "The court is not permitted to balance conflicting evidence in support of and in opposition to the [Board's] findings of fact, nor to determine which is the more substantial evidence, nor to consider where the preponderance of evidence lies; for to do so would be to substitute the Court's view of the evidence for that of the [Board,] and effectively nullify the conclusive character of the [Board's] findings of fact as provided by statute."
> Thus, the reviewing court must decide whether substantial evidence supports the Board's decision and not whether on the same evidence it would have arrived at the same conclusion.

Ward v. Johnson (1990), 242 Mont. 225, 228, 790 P.2d 483, 485. (Citations omitted.)

DISCUSSION

ISSUES OF FACT

SEA argues that substantial evidence does not exist to support certain of the agency's findings which supported the conclusion that SEA's base of operations was in Montana. After a careful review of the transcript, we conclude that substantial evidence supports the Hearing Examiner's Findings of Fact as amended by the

5

District Court.

There was testimony presented to the effect that SEA had office space in Missoula, trucks were dispatched out of Missoula, and all drivers were supervised by the manager of SEA, Jhan Sorensen, who worked out of the Missoula office. Moreover, testimony was presented that it was the Missoula manager who maintained day-to-day contact and communication with the drivers from his Missoula office; he also prepared payroll in Missoula. Further, the majority of the SEA workforce were Montana residents.

Testimony also demonstrated that the interview process for the hiring of drivers was a job shared between Evers in Wyoming and Sorensen in Montana although the positions were advertised out of Missoula, and the final hiring of drivers was accomplished in Montana. All testing of drivers occurred solely in Montana through Bitterroot by virtue of its Interstate Commerce Commission license. Finally, there was testimony that 40% of the maintenance on trucks occurred in Montana, according to Allstate's instructions. Although SEA argued that many activities were performed in Missoula because the agencies with which SEA contracts, Bitterroot and Allstate, required that these activities occur there, that does not change the fact that these activities did occur in Montana and they are activities basic to the operation of a trucking company. Clearly, substantial evidence supports the findings of fact at issue here. Furthermore, as stated above:

> "The court is not permitted to balance conflicting evidence in support of and in opposition to the [Board's] findings of fact, nor to determine which is the more substantial evidence, nor to consider where the

6

preponderance of evidence lies; for to do so would be to substitute the Court's view of the evidence for that of the [Board,] and effectively nullify the conclusive character of the [Board's] findings of fact as provided by statute."

Thus, the reviewing court must decide whether substantial evidence supports the Board's decision and not whether on the same evidence it would have arrived at the same conclusion.

Ward, 790 P.2d at 485. (Citations omitted.)

We conclude that substantial evidence supports the Findings of Fact made by the Hearing Examiner and modified by the District Court. We hold that the District Court did not err in affirming the Hearing Examiner's Findings of Fact which were challenged by the Appellant.

### ISSUES OF LAW

The Findings of Fact also support the conclusion that SEA's base of operations was in Missoula, Montana, from the inception of the corporation, and therefore, the employees' wages should have been reported to the State of Montana's Unemployment Insurance Division. Both parties agree that the statute to be applied in determining whether SEA employees' wages should be reported to the State of Montana is § 39-51-203, MCA, and particularly subsection(2)(a)(ii)(A), which provides:

(2)(a) The term "employment" includes an individual's entire service performed within or both within and without this state if:
. . .
(ii) the service is not localized in any state but some of the service is performed in this state and:
(A) the base of operations or, if there is no base of operations, then the place from which such service is directed or controlled, is in this state....

The portion of the statute which is at issue in the instant

7

case is subsection (ii)(A), which premises the place of employment in Montana on a company's "base of operations." If SEA's "base of operations" is in Montana, then the place of employment is in Montana, and the employees' wages should be reported to and unemployment insurance premiums paid to the Unemployment Insurance Division in the State of Montana. In order to determine whether SEA employees' wages should have been reported to Montana and not Wyoming, the company's base of operations would have to be in Missoula, Montana.

The DOLI used the following definition of "base of operations" in its determination. "Base of operations," which, as stated above, is the essential element at issue in the case, was defined as:

> . . . the place of more or less permanent nature from which the employee starts his work and to which he customarily returns to perform the terms of his contract with his employer, to seek other employment or to apply for unemployment benefits.

The Department states that this definition was taken from a U.S. Department of Labor Unemployment Insurance Program Letter # 291, dated July 1, 1952, which purports to explain "employment for employers employing in several states." The letter contains four tests for determining whether an employee is covered by Montana unemployment law, one of the tests being the "base of operations" test which is at issue here. We note that the letter also states that the tests apply to the employees, not the employer.

The District Court applied a definition for "base of operations," from a Montana regulation, which is similar to the

8

DOLI's definition and provides:

> [t]he term "base of operations" is the place of more or less permanent nature from which the employee starts his work and to which he customarily returns in order to receive instructions from the taxpayer or communications from his customers or other persons, to replenish stock or other materials, repair equipment, or to perform any other function necessary to exercise his trade or profession at some other point or points. . . .

Rule 42.26.202(7), ARM. Rule 42.26.202(7), ARM, is a Montana Department of Revenue regulation promulgated to implement the Multistate Tax Compact. The District Court correctly pointed out that § 15-1-601, Art. IV (14), MCA, ([part of] the Multistate Tax Compact) "uses the exact same language as § 39-51-203(2)(a) to define when compensation is considered paid in Montana." The court also stated, correctly, that "[t]he Annotations to the Multistate Tax Compact state that Article IV is based on the Model Unemployment Compensation Act, upon which the Montana Unemployment Compensation Act is also based. [See Commission Notes for Section 15-1-601, Article IV (14), MCA, Annotations at 30-31.] Thus the language of the Multistate Tax Compact and of § 39-51-203(2)(a) have the same source and the same meaning." We agree that these sections of the Multistate Tax Compact and the pertinent section of the Montana Unemployment Compensation Act are the same and provide a sound justification for approving of the use of the particular definition of "base of operations" used by the DOLI and cited above. We therefore conclude that the definition of "base of operations" used by the DOLI is a proper and acceptable definition of the term, and we approve of its use.

We also agree that the test to determine the place of

9

employment applies to the <u>employee</u>, not the employer. As stated above, the letter from the U.S. Department of Labor states that the "base of operations" test should be determined from the standpoint of the employee. Moreover, the Montana regulation cited above defines "base of operations" from the standpoint of the employee and case law from other jurisdictions concerning the same issue also focuses upon the employee in applying the base of operations test. See Walco Leasing v. Bilich (Minn. App. 1986), 383 N.W.2d 374; Iverson Const. v. Dept. of Emp. Services (Iowa 1989), 449 N.W.2d 356. There is substantial support for the Hearing Examiner's determination that the "base of operations" test should focus on the employee, and we conclude that the Hearing Examiner and the Board placed the proper focus of the test on the employee, not the employer as suggested by SEA.

Walco, cited above, also provides guidance in determining the meaning of the term "base of operations" because it enumerates factors to be considered in determining whether a given location is a company's base of operations. Walco states:

> Factors such as the place of beginning the service for which compensation is being paid, place of resupply of materials needed in the service, if any, place of repair of the machinery used in the service, the source of orders or directions for the services rendered and the permanency of any of these places if they exist should be considered in determining if there is a base of operations and where it is located.

Walco, 383 N.W.2d at 377, citing Heller v. International Transport, Inc. (1971), 481 P.2d 602. In the instant case, drivers were dispatched out of Missoula and if they needed instructions, direction or information, they spoke to Sorensen, SEA's manager.

10

Moreover, payroll was prepared in Missoula and many repairs were made in Montana. Clearly, many activities basic to the operation of a trucking company and listed in Walco as determinative factors in determining the "base of operations" occurred in Montana.

Applying the "base of operations" definition used by the DOLI, and the Walco factors, we conclude that substantial evidence existed to support the conclusion that SEA's base of operations was in Montana since 1988, and not in Wyoming. We hold that the District Court did not err in affirming the Board's affirmance of the Hearing Examiner's conclusion that SEA's base of operations was in Missoula, Montana, and therefore, its employees' wages should have been reported to and unemployment insurance premiums paid to Montana, not Wyoming.

AFFIRMED.

Justice

We Concur:

Justices

December 22, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Patrick G. Frank & W. Carl Mendenhall
WORDEN, THANE & HAINES, P.C.
P. O. Box 4747
Missoula, MT 59806

Daniel B. McGregor
DEPARTMENT OF LABOR & INDUSTRY
P. O. Box 1728
Helena, MT 59624

Stephen M. Frankino, Esq.
Hughes, Kellner, Sullivan & Alke
P.O. Box 1166
Helena, MT 59624-1166

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _A. Gallagher_
Deputy