**SKILLPATH SEMINARS, Appellant,**

v.

**Ritchard SUMMERS, Defendant,**

**Division of Employment Security, Respondent.**

**No. WD 63577.**

Missouri Court of Appeals, Western District.

April 5, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 31, 2005.

Application for Transfer Denied Aug. 30, 2005.

Robart O. Lesley, Kansas City, MO, for appellant.

Alan J. Downs, Jefferson City, MO, for respondent.

Before LOWENSTEIN, P.J., SPINDEN and SMART, JJ.

HAROLD L. LOWENSTEIN, Judge.

This is an appeal from a determination by the Labor and Industrial Relations Commission ("Commission") that Ritchard Summers earned "wages" "in employment" as an employee of SkillPath Seminars ("SkillPath"). At issue is whether, under Chapter 288,[1] SkillPath was Sum-

mers' employer and thus required to report his wages to the State of Missouri.

## STATEMENT OF FACTS

In 1998, Summers entered into a contract with the appellant, SkillPath, to present seminars on computer technology. According to the parties' "Training Services Agreement" ("Agreement"), Summers worked for SkillPath in the capacity of an "independent contractor." He offered seminars in twenty-four states (including Missouri), the District of Columbia, Canada, and Australia. To continue his relationship with SkillPath, Summers was required to maintain acceptable levels of customer satisfaction and product sales.

Because Summers described himself an expert in computer technology training, he did not undergo any formal training prior to giving his first presentation. Instead, SkillPath required him to go to its Kansas office for a one-time "run-through," after which he was given verbal feedback.

Once he began presenting seminars, Summers indicated his availability on a month-by-month basis. After seminars were scheduled, Summers was unable to change the time or date. SkillPath provided Summers with a laptop computer, a LCD projector, and a baseline power point presentation for use at seminars. Even though Summers was free to deviate from the power point, he was still required to present on the specific topic(s) advertised to the customer for each respective seminar.

Because SkillPath did not provide Summers with an office, he worked from his home in St. Louis, Missouri.[2] In instances where he did modify SkillPath's power

---

1. All statutory references are to RSMo. (2000) unless otherwise indicated.

2. Although the record does not contain a definite date, it appears that Summers moved from Chicago, Illinois, to St. Louis on or about November 26, 1998.

point presentation, he did so at his home. SkillPath also sent a packet containing each month's work assignments to this address and called him at home if they needed to communicate with him for any reason.

When Summers presented seminars in locations other than St. Louis, SkillPath paid his mileage both to and from his home. In addition, it paid for Summers' hotel, provided a $40.00 per day per diem food allowance, and funded expenses for airline tickets and ground transportation when he did not drive to the location. Summers was otherwise paid a flat fee for each day he presented a seminar.

Under the Agreement, SkillPath could not end its relationship with Summers unless he failed to present seminars promptly, competently, and professionally. He was also expected to sell $8 worth of products per attendee at each seminar. Because he did not meet SkillPath's sales requirement, Summers was terminated in May of 2003. Summers then filed a claim for unemployment benefits. SkillPath denied liability, arguing that Summers was an independent contractor rather than an employee. The Division of Employment Securities ("Division") found that Summers performed services for "wages" "in employment" by SkillPath and was, therefore, subject to Missouri Employment Security Law; the Commission affirmed. SkillPath now appeals.

## STANDARD OF REVIEW

In reviewing an employment security decision, this court "may modify, reverse, remand for rehearing, or set aside" the Commission's decision if: (1) the Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was no sufficient competent evidence in the record to warrant making the award. § 288.210. Where a dispute involves "the construction and application of the statute to virtually uncontroverted facts, the issue is one of law" and is reviewed de novo. *Div. of Employment Sec. v. Taney Cty. Dist. R–III*, 922 S.W.2d 391, 393 (Mo. banc 1996). Even in instances where the Commission reached the correct result, albeit for an incorrect reason, the decision should be affirmed. *Lauderdale v. Div. of Employment Sec.*, 605 S.W.2d 174, 178 (Mo.App.1980).

## ANALYSIS

Service performed by an individual for which he or she gets paid is labeled as "employment" unless it is shown that such service was performed in the capacity of an independent contractor. § 288.034(5). An employer is required to report wages to the State of Missouri if one of Section 288.034's four jurisdictional tests is satisfied. "Employment," as set forth by statute includes:

an individual's entire service, performed within or both within and without this state if:

(1) The service is localized in this state; or

(2) The service is not localized in any state but some of the service is performed in this state and the base of operations, or, if there is no base of operations, then the place from which such service is directed or controlled, is in this state; or the base of operations or place from which such service is directed or controlled is not in any state in which some part of the service is performed but the individual's residence is in this state.

§ 288.034(2).

In this case, the Division determined that Summers performed services for

"wages" in "employment" by SkillPath, thus entitling him to receive unemployment compensation. The Commission affirmed, reasoning that Summers' services were localized in Missouri. Although the Commission based its conclusion on the incorrect subsection of Section 288.034, the correct outcome was nonetheless achieved.

In its first point on appeal, SkillPath contends that the Commission acted in excess of its powers in determining Summers was entitled to wage credits because his services were not localized in Missouri. While SkillPath is correct in this contention, the Commission's determination can be affirmed on other grounds. Specifically, Summers' base of operations was in Missouri and he performed services in the state.

Many states' unemployment statutes are modeled after uniform laws proposed by the federal government. The United States Department of Labor has interpreted the localization provisions contained in these uniform statutes to provide states guidance in applying their own respective statutes. In defining "base of operations," it states that "[t]he individual's base of operations should not be confused with the place from which his service is directed or controlled." United States Department of Labor, Unemployment Insurance Program Letter No. 291, *Unemployment Insurance Coverage of Service Performed Both Within and Without a State, Interpretation of "Localization of Work" Provisions* (July 1, 1952), *available at* http://ows.doleta.go /dmstree/uipl/uipl_p re75/uipl_291a.htm [hereinafter "UIPL 291"]. Moreover,

> [t]he "base of operations" is the place or fixed center of more or less permanent nature from which the employee starts work and to which he customarily returns in order to receive instructions from his employer or communications from his customers or other persons, or to replenish stocks and materials, to repair equipment, or to perform any other functions necessary to exercise his trade or profession at some other point or points. The base of operations *may be the employee's business office which may be located at his residence*, or the contract of employment may specify a particular place at which the employee is to receive his directions and instructions. This test is applicable principally to employees, such as salesmen, who customarily travel in several States.

*Id.* (emphasis added). Application of this test is to be employee-focused, viewing all interaction with an employer from the standpoint of the employee. *See id.* (stating inquiry should be framed according to whether "the individual perform[ed] some service in the State in which *his* base of operations is located") (emphasis in original).

To further illustrate the circumstances under which the base of operations test is appropriate, the Department of Labor provided the following examples:

1. A salesman, a resident of California, sold products in California, Nevada, and Oregon for his employer whose place of business was in New York. The salesman operated from his home where he received instructions from his employer, communications from his customers, etc. Once a year the salesman went to New York for a two-week sales meeting. His base of operations was in California and he performed some serviced in California. Therefore, all of his service was covered by the California law.

2. An employee worked for a company whose home office was in Pennsylvania. He was made a regional director working out of a branch office in New York. He worked mostly in

New York, but spent considerable time also in Pennsylvania and New Jersey. The individual's base-of-operations was in New York. Since he performed some service in New York and his base of operations was in New York, it is immaterial that the direction and control was in Pennsylvania, and all of the individual's service was covered by New York law.

UIPL 291. As is evident from these scenarios, an appropriate examination focuses on the state in which the employee performs job functions and receives communications, not the state from which the employer directs or controls the employee or the state of the employer's base of operations.

Instead of following this approach, Skill-Path urges this court to look to other jurisdictions that have similar jurisdictional statutes, which have found that an employee's residence is not his or her base of operations. See, e.g., S.E.A. Trucking v. Dep't of Labor, 269 Mont. 108, 887 P.2d 236 (1994); In re Normyle, 161 A.D.2d 888, 556 N.Y.S.2d 785 (1990); Heller v. Int'l Transport, Inc., 94 Idaho 91, 481 P.2d 602 (1971). None of these cases, however, explicitly contemplate the Department of Labor's examples. Furthermore, important factual differences exist between the instant case and the cases cited by Skill-Path.

For instance, although the S.E.A. Trucking court stated that it applied the base of operations test "from the standpoint of the employee," it ultimately concluded that employees' wages should have been reported to the state in which the trucking company's base of operations was located, rather than the state serving as the base of operations for the individual employees. S.E.A. Trucking, 887 P.2d at 241. Similarly, the instant case contains more supporting evidence that Summers' residence served as his base of operations than do the cases cited by SkillPath. See, e.g., In re Normyle, 556 N.Y.S.2d at 787 (holding that claimant's base of operations was in New York, when he merely started from and returned to his out-of-state home after business trips, received occasional calls at home from his employer, but traveled to New York three to four times each year for training); Heller, 481 P.2d at 604 (stating that when the only function claimant performed at his home any different than those typically conducted at one's residence was "perform[ing] basic functions of his job," claimant's home did not qualify as his base of operations since hauling trailers was inherently incapable of being performed in one place).

■ Here, Summers lived in St. Louis and worked from his home. He received packets of materials from SkillPath on a monthly basis and prepared his presentations while at home. SkillPath contacted Summers in St. Louis and paid him mileage to and from his home when he drove to the various seminar locations. Summers presented 111 seminars in Missouri during the course of his relationship with SkillPath. As a result, Missouri is Summers' base of operations and "some of the service" was performed within the state. Consequently, Summers' services fall within Section 288.034(2) and SkillPath is subject to Missouri's Employment Security Law. Point denied.

■ SkillPath next contends that the Division erred in determining Summers was entitled to wage credits because it failed to consider each of the twenty factors used to determine whether a worker is an employee who earns "wages in employment." Section 288.034(5) provides that "[i]n determining the existence of the independent contractor relationship, the common law of agency right to control shall be applied." The common law agency test, inter alia, provides that if "the

alleged employer retains the right to control the manner and means by which the results are to be accomplished, the individual who performs the service is an employee. If only the results are controlled, the individual performing the service is an independent contractor." § 288.034(5). IRS Revenue Ruling 87–41 sets forth a twenty-factor test to help determine if a worker is an independent contractor.[3] No one of these factors is controlling, but should all be balanced to reach a determination of the worker's status. *Fritts v. Div. of Employment. Sec.*, 11 S.W.3d 721, 725–27 (Mo. App.1999).

Here, examination of the twenty factors leads to the overall determination that Summers was an employee. Although the contract between the parties labeled Summers as an "independent contractor," such self-given labels are not determinative. *Stover Delivery Sys. v. Div. of Employment. Sec.*, 11 S.W.3d 685, 688 (Mo.App. 1999). Facts that are important to determination, however, include: (1) SkillPath exercised control over the content of Summers' presentations, as he was required to present the information that had been advertised to the customers and had to have acceptable levels of customer satisfaction and product sales; (2) Summers was given verbal feedback on his method of presentation after an initial run-through; (3) Summers was issued a business card, which contained his name along with his employer's address and phone number; (4) although Summers was entitled to hire a substitute, SkillPath had to approve the substitute in advance; (5) an indicia of a continuing relationship was present, as Summers performed services on a regular basis for five years and presented a total of 529 seminars; (6) Summers had no control over the time and date of seminars once set; (7) although permitted by contract to offer his services to others, Summers did not do so and routinely informed SkillPath that he was "available all month" to present seminars; (8) Summers was required to collect registration materials and program evaluations and submit them within two days; (9) Summers was required to account for his actions by submitting invoices in order to receive payment; (10) SkillPath paid for Summers' airline tickets, hotel, mileage, ground transportation, and provided a $40.00 per day per diem food allowance; (11) SkillPath provided Summers with a laptop computer and LCD projector to use in seminars; and (12) Summers did not have the potential for profit and loss in the entrepreneurial sense, in that it was not possible for him to lose money while working for SkillPath.

In addition, SkillPath argues that two additional factors—provision of employee benefits and tax treatment—should also be considered. Summers did not receive employee benefits and SkillPath did not withhold funds from his paycheck for federal, state, or local taxes. Although these factors certainly weigh in favor of classifying Summers as an independent contractor, they do not outweigh the above-listed factors that indicate Summers is an employ-

---

**3.** The twenty factors important in determining whether the requisite degree of control was exercised include: (1) Instructions; (2) Training; (3) Integration; (4) Services Rendered Personally; (5) Hiring, Supervising, and Paying Assistants; (6) Continuing Relationship; (7) Set Hours of Work; (8) Full Time Required; (9) Doing Work on Employer's Premises; (10) Order or Sequence Set; (11) Oral or Written Reports; (12) Payment by Hour, Week, Month; (13) Payment of Business and/or Traveling Expenses; (14) Furnishing of Tools and Materials; (15) Significant Investment; (16) Realization of Profit or Loss; (17) Working for More Than One Firm at a Time' (18) Making Service Available to General Public; (19) Right to Discharge; (20) Right to Terminate. Rev. Rul. 87–41, 1987–1 C.B. 296.

ee.  The Commission's decision, therefore, is affirmed.

CONCLUSION

■  Section 288.034(2)'s base of operations test must be applied from the employee's point of view.  Because Summers received mailings and telephone communications from SkillPath in Missouri, prepared for seminars in Missouri, and was paid mileage for traveling from his home to seminars outside of St. Louis, the Commission correctly determined that his base of operations was in Missouri.  Furthermore, since SkillPath controlled the manner in which Summers performed, the Commission did not err in classifying him as an employee.

The judgment is affirmed.

All concur.