**IVERSON CONSTRUCTION, INC., Appellee,**

v.

**DEPARTMENT OF EMPLOYMENT SERVICES, DIVISION OF JOB SERVICE, Appellant.**

No. 89–301.

Supreme Court of Iowa.

Dec. 20, 1989.

Walter F. Maley, Des Moines, for appellant.

Brendan T. Quann and Stephen C. Krumpe, of O'Connor & Thomas, P.C., Dubuque, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, SCHULTZ, and ANDREASEN, JJ.

ANDREASEN, Justice.

The Department of Employment Services (agency) appeals from an adverse ruling and judgment rendered by the district court on review of agency action. The district court concluded the agency erroneously denied an application for refund of contributions paid by Iverson Construction, Inc. (employer). Because we agree with the district court its decision is affirmed as modified.

Iverson Construction Inc. is a Wisconsin corporation with its principal place of business in Platteville, Wisconsin. In 1985 and 1986 Iverson had a construction project in Iowa. In December 1986, Iverson contacted a job service representative in Dubuque, Iowa, regarding contributions to the Wisconsin unemployment fund supposedly paid in error, covering wages paid in the second and third quarters of 1986. After receiving reporting information from the representative, Iverson filed wage adjustment reports covering wages paid during the second, third, and fourth quarters of 1985 and covering wages paid during 1986. The adjustment for 1985 wages amounted to $13,398.12, which Iverson paid.

Iverson then requested an unemployment compensation refund from Wisconsin's Department of Industry, Labor and Human Relations for contributions paid on the 1985 wages. The request was denied. Soon after this, Iverson requested a refund from Iowa's Job Service division for the 1985 contributions. The request was denied for two reasons. An agency auditor concluded that the contributions were properly paid to the agency and that the contributions could not be refunded because unemployment compensation benefits were being drawn against them.

Iverson appealed. A telephone hearing followed, and the hearing officer issued a decision denying the refund and affirming the auditor's determination. The hearing officer concluded the employer failed to establish that the 1985 services of the employees listed in the wage adjustment forms were not "localized" in Iowa. In addition, the hearing officer concluded that there was a base of operations in this state from which the services of the employees were directed and controlled. Therefore, the 1985 services of the employees were covered "employment" within the meaning of Iowa Code section 96.19(6)(b) (1985), and the employer was not entitled to a refund. A request for a rehearing was denied, and Iverson filed a petition for judicial review of agency action in the district court.

On judicial review, the district court reversed the agency decision and remanded the case, instructing the agency to refund the employer $13,398.12, with interest, for contributions erroneously paid to it. The agency appeals, and argues that the court erred in reversing the agency decision and erred further in allowing interest on the refund but disallowing any offset for benefits paid out against the contributions received.

I. *Scope of Review.*

When reviewing a district court decision on the validity of agency action, our task is to determine whether the district court has correctly applied the law. *Iowa Fed'n of Labor v. Department of Job Serv.*, 427 N.W.2d 443, 445 (Iowa 1988). In doing so, we apply the standards of Iowa Code section 17A.19(8) to the agency action to determine whether our conclusions are the same as those at the district court. *Id.* If our conclusions are the same, we must affirm; if not, we reverse. *Id.*

Accordingly, our review is not de novo, but is limited to corrections of errors

at law. *Sallis v. Employment Appeal Bd.*, 437 N.W.2d 895, 896 (Iowa 1989). We are bound by the hearing officer's findings of fact if those findings are supported by substantial evidence. Evidence is substantial when a reasonable mind could accept it as adequate to reach the same findings. *Id.* We are not, however, bound by the agency's legal conclusions, but may correct misapplications of the law. *Id.* If the facts and inferences fairly to be drawn therefrom are undisputed, the issue becomes one of law. *Id.* If the facts are in dispute or inconsistent conclusions can be drawn from the evidence, then the agency's findings of fact are conclusive.

II. *"Employment" Subject to the Iowa Employment Security Law.*

Employers subject to the Iowa Employment Security Law are required to pay contributions to the State Unemployment Compensation Fund based on wages paid for service in "employment." Iowa Code section 96.19(6) provides, in part:

*b.* The term "employment" shall include an individual's entire service, performed within or both within and without this state if:

(1) The service is localized in this state, or

(2) The service is not localized in any state but some of the service is performed in this state and (i) the base of operations, or, if there is no base of operations, then the place from which such service is directed or controlled, is in this state; or (ii) the base of operations or place from which such service is directed or controlled is not in any state in which some part of the service is performed, but the individual's residence is in this state....

. . . .

*e.* Service shall be deemed to be localized within a state if:

(1) The service is performed entirely within such state, or

(2) The service is performed both within and without such state, but the service performed without such state is incidental to the individual's service within the state, for example, is temporary or transitory in nature or consists of isolated transactions.

■ The definition of "employment" contained in the Iowa Code is based on a uniform definition drafted in the late 1930's. *See In re Mallia*, 299 N.Y. 232, 238–39, 86 N.E.2d 577, 580, 9 A.L.R.2d 636, 642 (1949). The uniform definition was intended to eliminate uncertainty as to the application of state unemployment compensation laws to the payment of benefits and assessment of taxes upon employers where a worker performed services for a single employer in a number of states. *Id.* According to the federal Social Security Board, the definition was based on two principles:

(1) All the employment of an individual should be allocated to one State and not divided among the several States in which he might perform services, and such State should, of course, be solely responsible for benefits payable to him;

(2) the State to which his employment is allocated should be the one in which it is most likely that the individual will become unemployed and seek work.

*Id.* (quoting Social Sec. Bd., Employment Sec. Memorandum No. 13, 1937). The purpose of the statutory provision is to bring within the scope of the unemployment compensation law those employees who work in two or more states where the most substantial contacts of the employment are in a single state. *See id. See also Walco Leasing v. Bilich*, 383 N.W.2d 374, 377 (Minn.App.1986); 76 Am.Jur.2d *Unemployment Compensation* § 33, p. 917 (1975). That purpose is accomplished by applying a series of tests, in the following order of preference: (A) the state where the service is "localized," (B) the state where the "base of operations" is located, (C) the state from which the service is "directed or controlled," (D) the state of the employee's residence. *See* Iowa Code § 96.19(6)(b).

A. *The Localization Test.*

■ The hearing officer concluded that the employer failed to establish that the services of the employees identified in the ·

refund claim were not localized in this state. Under Iowa Code section 96.19(6)(e), service is localized in a state if (1) the service is performed entirely within the state or (2) the service is performed both within and without the state, but the service performed without the state is incidental to the service performed within the state. For example, if the service performed outside the state is temporary or transitory in nature or consists of isolated transactions, then the service is "localized" within the state.

Merely because some services are performed in a state does not render the employment localized in that state. An Iowa administrative rule provides: "Services performed in a state are considered localized in that state and contributions are payable to such state." 345 Iowa Admin.Code § 3.24(1)(a)(1986). Such a rule ignores the time element of service in employment and runs contrary to the manifest purpose of the statute to allocate an individual's employment to one state during reporting periods.

The employer's representative testified at the hearing that the wages reported on the amended forms for 1985 were paid to Wisconsin employees that were part of a Wisconsin crew. He added that they had worked in Wisconsin part of the year and then went down to Iowa and worked. Every one of them was an employee of Iverson before and after working in Iowa. He testified they were Wisconsin residents, they were directed from the Wisconsin office, and their only work in Iowa concerned the particular contract or group of contracts. He indicated the construction crews rotated—that they might go to Iowa for two months, come back to Wisconsin for a month and then go back to the Iowa project. This evidence is undisputed.

The conclusion of the agency runs directly contrary to the undisputed evidence presented at the hearing, and indicates a misapplication of law, affecting its decision and prejudicing substantial rights of the employer. *See* Iowa Code § 17A.19(8). The services of the employees were neither performed entirely within Iowa nor were the services performed outside Iowa incidental to the services performed within Iowa. Accordingly, the services of the employees were not localized in Iowa.

Under the same analysis, the services of the employees were not localized in Wisconsin, either. During the reporting periods, the services performed within Iowa were so substantial that they may not be characterized as incidental to the services performed in Wisconsin. The Iowa services were a major, regular, enduring, and frequent part of the services performed on the employer's behalf during the reporting periods. *See Heller v. International Transp., Inc.*, 94 Idaho 91, 92–93, 481 P.2d 602, 603–04 (1971); *In re Mallia*, 299 N.Y. 232, 86 N.E.2d 577, 9 A.L.R.2d 636 (1949); *Puget Sound Bridge & Dredging Co. v. State Unemployment Compensation Comm'n*, 168 Or. 614, 623, 126 P.2d 37, 41 (1942). Consequently, the services were not localized in either state.

### B. *The Base of Operations Test.*

If an individual's service is not localized in any state but some of the service is performed in this state, then the "base of operation" is the next controlling factor. *See* Iowa Code section 96.19(6)(b)(2). The statute fails to indicate whether the *employer's* base of operation or the *employee's* base of operation is the focus of this factor. However, an administrative rule provides, in part:

> Where services are performed equally between two (2) states by employees, the base of operation concept is involved. The place of more or less permanent nature from which the employee works is a state where contributions are payable. That is to say, the state where the employee starts work and to which the employee customarily returns is the state that collects the contributions.

345 Iowa Admin.Code § 3.24(1)(b). As indicated by the administrative rule and case law from other jurisdictions, the focus of the term "base of operation" is upon the *employee*. *See Walco Leasing*, 383 N.W.2d at 376–78; *Heller*, 91 Idaho at 93–94, 481 P.2d at 604–05; *Mallia*, 299 N.Y. at

239–40, 86 N.E.2d at 580–81, 9 A.L.R.2d at 643.

■ Furthermore, the test is operative only if a single base of operation for the entire service is within a state where some of the service is performed. *Mallia,* 299 N.Y. at 240, 86 N.E.2d at 581, 9 A.L.R.2d at 643. *See* 76 Am.Jur.2d *Unemployment Compensation* § 33, p. 918 (1975). If the employee maintains more than one base of operation during a reporting period, the agency must apply the next statutory test.

The agency found that "construction sites would require supervision and direction on a local basis at the site itself." It further stated that "[c]ommon knowledge would require one to assume that construction projects are supervised from a base of operations at or near the localization of the job site." The agency concluded that "necessarily there was a base of operations within the state of Iowa where the services of such employees were directed or controlled in the state of Iowa."

■ The agency erred in two respects. First, it misapplied the base of operation test in focusing on the employer rather than the employees. Second, it applied the test where the undisputed evidence showed the employees maintained bases of operation in both Iowa and Wisconsin during the reporting periods. Since the entire services were not localized in either state and there was not a single base of operation, we resort to the next statutory test.

### C. *The Direction and Control Test.*

■ The place from which an individual's service is directed and controlled determines which state's law applies where some service is performed in the state, but neither the localization test nor the base of operations test isolates a single state responsible for the employment. An administrative rule explains this test:

When there is no direct relation between base of operations (the place of more or less permanent nature from which the employee works) and the place from which services are directed and controlled, the state where the employer is located and who controls or has the right

to control the employee's services is the state that should be paid the contributions. The place of immediate control and not ultimate control is a significant factor. The place of direction and control is considered only if there is no base of operations. Therefore, if services are not localized and there is no base of operations in any state where services are performed, the place of direction and control governs as though those same services are performed therein.

345 Iowa Admin.Code § 3.24(1)(c). The test refers to a power which is exercised. *Mallia,* 299 N.Y. at 241, 86 N.E.2d at 581, 9 A.L.R.2d at 644.

■ The focus of the test is upon the place from which the entire service of the employee during the reporting period is directed or controlled, and not upon the place from which any particular project is directed or controlled. The agency, however, concluded that "[i]t is reasonable to assume that the construction project would be controlled and directed at the site of the project." The agency erred in focusing on the Iowa construction project rather than the entire services of the employees. The employer's representative had testified the services of the employees were directed from the employer's Wisconsin office. If the agency had focused on the place from which the entire services of the employees during the reporting periods were directed and controlled, it could have reached only one conclusion. The undisputed evidence indicates that the entire employment services of the employees listed in the amended forms were directed and controlled from Wisconsin during 1985. *See, e.g., Mallia,* 299 N.Y. at 240–41, 86 N.E.2d at 581, 9 A.L.R.2d at 643–44.

### D. *The Residence Test.*

■ Even if no other statutory tests are satisfied, the residence of the employee is determinative, and the result would be the same. The employer's representative testified the employees listed on the amended forms were all Wisconsin residents. Again, the agency reached a contrary conclusion: "The record, however, does not

justify a conclusion that only residents of Wisconsin were employed by the employer during the second, third and fourth quarters of 1985 during the completion of the construction contract requirements." The employer never asserted that only Wisconsin residents were employed on the project. The employer's representatives stated, in part:

> Well, the wages that we were reporting to Iowa on amended forms were from Wisconsin employees that was a Wisconsin crew working in Iowa. They had worked in Wisconsin part of the year and then went down to Iowa and worked. We had always filed Iowa unemployment forms under Iowa employees that worked just in Iowa that were temporary help down there that lived in the city of Muscatine or lived in Muscatine County.

The agency's conclusion runs directly contrary to the undisputed evidence presented at the hearing, and indicates a misapplication of law in bringing all employees within the reach of the Iowa Employment Security Law where only some temporary employees properly are within its reach. Under the statute, the employment services of each employee are analyzed individually.

■ The agency erroneously denied the employer's request for a refund. The services of the employees listed in the wage adjustment forms were not covered employment within the meaning of the Iowa Employment Security Law. The district court did not err in reversing the agency decision.

### III. *Interest on Refunds.*

■ The district court ordered the agency to refund to Iverson $13,398.12, with interest, for contributions erroneously made by the employer to the unemployment fund. The agency argues the refunds of contributions paid due to an erroneous reporting of wages are, by statute, to be paid without interest. Iowa Code section 96.14(5) provides in part:

> If the division of job service finds that an employer has paid contributions or interest on contributions, which have been erroneously paid ... and the employer

has filed an application for adjustment, the division shall make an adjustment, compromise, or settlement, and, at the employer's option, shall either refund the payments or treat the payments as voluntary contributions with no limitation on the payments' effects on the employer's contribution rate. Refunds so made shall be charged to the fund to which the collections have been credited, and shall be paid to the claimant without interest.

Iverson urges it is entitled to legal interest under chapter 535 of the Iowa Code. By statute, interest shall be allowed on all money due on judgments and decrees of court. Iowa Code § 535.3. Interest accrues from the date of the commencement of the action. *Id.* We conclude the district court has no authority to enter a money judgment against the agency. On judicial review of agency action, the court cannot order or approve the payment of interest when the agency is prohibited by statute from paying interest.

### IV. *Offset Against Refund for Benefits Paid Out.*

■ The district court refused to allow the agency any offset against the refund for benefits paid out to employees based on the 1985 wages erroneously reported to the agency. The court found the evidence unclear on whether the agency actually paid out benefits to employees based on 1985 wages. Regardless, the district court concluded that the sole question under Iowa Code section 96.14(5) is whether the employer erroneously paid contributions and not whether the agency paid out benefits based on those contributions.

The agency argues here that it is entitled to offset against the refund benefits paid out on account of the error. An administrative rule provides:

> When an employer requests a refund or credit of contributions paid due to an erroneous reporting of wages, such refund or credit shall be reduced by the amount of benefits paid and charged to the employer on account of such wages.

345 Iowa Admin.Code § 3.37(4). We cannot conclude on the record before us that the rule is unreasonable, arbitrary, capri-

cious, or otherwise beyond the authority delegated to the agency. On remand, the agency shall determine whether and to what extent benefits were erroneously paid out on account of the 1985 wages.

## V. *Disposition.*

We affirm the district court's reversal of the agency decision that denied the application for a refund. We modify the district court order to exclude the recovery of interest on the refund. We remand to the agency for determination of an offset, if any, for amounts, if any, paid out to employees on account of the erroneous contributions made upon 1985 wages.

AFFIRMED AS MODIFIED.