Gary R. GILBERT, Plaintiff-Appellant,†

v.

LABOR AND INDUSTRY REVIEW COMMISSION and
Department of Workforce Development
Unemployment Division,
Defendants-Respondents.

Court of Appeals

*No. 2006AP2694. Submitted on briefs April 16, 2007.
—Decided November 26, 2008.*

2008 WI App 173

(Also reported in 762 N.W.2d 671.)

† Petition to review dismissed 12/29/08.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Sheila Stuart Kelley* of *Kopp, McKichan, Geyer, Skemp & Stombaugh, LLP*, Platteville.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Peter W. Zeeh* of *Labor and Industry Review Commission* and *Department of Workforce Development Unemployment Division*, Madison.

Before Higginbotham, P.J., Vergeront and Lundsten, JJ.

¶ 1. HIGGINBOTHAM, P.J. Gary R. Gilbert appeals a decision of the Labor and Industry Review Commission (LIRC) that was affirmed by the circuit court, determining that Gilbert, d/b/a Gary Gilbert Construction, was liable for delinquent unemployment taxes with interest for calendar year 1999, the first two quarters of 2000 and the first two quarters of 2001. The two issues in this appeal are whether services performed during this period by four workers constituted employment in Wisconsin within the meaning of Wis. Stat. §§ 108.02(15)(b) and (d) (2005–06)[1] rendering Gilbert a Wisconsin employer

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

for unemployment tax purposes, and whether the workers were Gilbert's employees within the meaning of WIS. STAT. §§ 108.02(12)(a), (b), and (bm).

¶ 2. Gilbert contends that he was not a Wisconsin employer under WIS. STAT. § 108.02(15) because the service of the workers was localized in Illinois, or in the alternative, because the direction and control of their service came from job sites in Illinois. He also contends that the workers were independent contractors rather than employees for purposes of § 108.02(12).

¶ 3. Giving LIRC's decision on whether Gilbert was a Wisconsin employer subject to unemployment tax due weight deference, we conclude that LIRC's determination that Gilbert was a Wisconsin employer within the meaning of WIS. STAT. § 108.02(15) is based on a reasonable interpretation of the statute that comports with its purpose, and that Gilbert's view that he was not a Wisconsin employer is based on an interpretation of the statute that is not more reasonable than LIRC's. Giving LIRC's decision on whether the workers were Gilbert's employees within the meaning of the statutes great weight deference, we further conclude that LIRC's determination that the workers were Gilbert's employees is based on a reasonable interpretation of WIS. STAT. §§ 108.02(12)(b) and (bm). Accordingly, we affirm the circuit court's judgment affirming LIRC's decision.

### Background

¶ 4. The following facts are taken from LIRC's decision, and are not challenged by Gilbert on appeal. During the relevant period of 1999 through 2001, Gilbert was a sole proprietor of Gary Gilbert Construction, a home construction business. The majority of

Gilbert's business resulted from his status as a dealer and construction contractor for Heartbilt Homes, Inc., a log home manufacturer. Gilbert maintained a business office at his home in Hazel Green, Wisconsin, but a majority of the company's construction sites were in northwestern Illinois. However, Gilbert also performed new construction work in Wisconsin and Iowa.

¶ 5. Prior to 1998, Gilbert considered all of his workers to be employees and, accordingly, paid unemployment insurance taxes on their wages. In the fall of 1997, Gilbert met with four of his employees—his son Ryan Gilbert, Russell Hilby, Mark Sheldon, and Terry Shireman—and requested that they become independent contractors beginning in 1998. The workers agreed to the change and received increased wages.

¶ 6. Following the ostensible change in relationship, the workers provided their own tools, transportation, and liability insurance. All other materials and supplies needed for the work were provided as before by Gilbert, Heartbilt Homes, or the customers. The workers contracted annually to perform services for Gilbert at an hourly rate, and billed Gilbert every two weeks for their work. Ryan Gilbert, Sheldon, and Shireman all performed services for Gilbert from 1999 through 2001, and Hilby worked for Gilbert in 1999 and 2000. All of the workers performed carpentry work, but Sheldon and Shireman also did some dry walling, roofing, and flooring work, and Ryan Gilbert performed electrical work. Gilbert paid his workers primarily on an hourly basis, although Sheldon and Shireman sometimes bid for work on a piecework basis. Additionally, Gilbert paid Ryan Gilbert on a piecework basis for electrical work, which accounted for twenty-five percent of his total labor.

¶ 7.　In 2003, the Department of Workforce Development (DWD) assessed Gilbert for past due and delinquent unemployment insurance contributions with interest for 1999 and the first two quarters of 2000 and 2001. Gilbert appealed the assessment to an administrative law judge, who affirmed the agency's action. Gilbert sought a de novo review before LIRC, which affirmed the administrative law judge's decision with modifications. Gilbert then sought judicial review of LIRC's decision. The circuit court affirmed LIRC's decision and Gilbert appeals. Additional facts are provided as needed in the discussion section.

## *Standards of Review*

¶ 8.　This appeal is taken from a circuit court decision affirming an administrative agency's decision. We review the agency's decision, not that of the circuit court, and the scope of our review is the same as that of the circuit court. *Target Stores v. LIRC*, 217 Wis. 2d 1, 11, 576 N.W.2d 545 (Ct. App. 1998). Gilbert does not challenge LIRC's findings of fact on appeal. Gilbert instead contests LIRC's interpretation and application of WIS. STAT. §§ 108.02(12)(b) and (bm), and (15)(b) and (d), which are questions of law. Although we ordinarily review questions of law de novo, we may defer to LIRC's interpretation of law, applying either great weight or due weight deference, to correspond with its expertise in a given area of law. *See Kannenberg v. LIRC*, 213 Wis. 2d 373, 384–85, 571 N.W.2d 165 (Ct. App. 1997).

¶ 9.　Great weight deference is appropriate when an administrative agency's interpretation is one of long-standing and will provide uniformity and consis-

tency in application of the statute; the agency employed its expertise or specialized knowledge in forming the interpretation; and the statute is one the agency has been charged with administering. *See Hutchinson Tech., Inc. v. LIRC*, 2004 WI 90, ¶ 22, 273 Wis. 2d 394, 682 N.W.2d 343. Under the great weight standard, we will uphold an agency's interpretation as long as it is reasonable and not contrary to the statute's clear meaning, even if we find a different interpretation more reasonable. *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 287, 548 N.W.2d 57 (1996). We apply due weight deference "when the agency has some experience in the area, but has not developed the expertise which necessarily places it in a better position to make judgments regarding the interpretation of the statute than a court." *Id.* at 286. Under the due weight standard, we will uphold the agency's decision if its interpretation is reasonable, and no other interpretation is more reasonable than the agency's, and the agency's interpretation comports with the purpose of the statute. *Id.* at 286–87. The de novo standard of review is appropriate when the issue is a matter of first impression or when the agency's position has been so inconsistent as to provide no real guidance. *Id.* at 285.

¶ 10. LIRC contends that its decision that the workers' services constituted employment in Wisconsin within the meaning of Wis. Stat. §§ 108.02(15)(b) and (d) is entitled to at least due weight deference. Gilbert takes no position on the degree of deference we afford LIRC's decision under §§ 108.02(15)(b) and (d). We conclude, given LIRC's limited degree of experience interpreting §§ 108.02(15)(b) and (d) in the present context, that its decision that the workers' service in this case is employment in Wisconsin within the meaning of §§ 108.02(15)(b) and (d) is entitled to due weight

deference. As LIRC explains on appeal, DWD is charged with the administration and enforcement of the unemployment insurance statutes, and LIRC has construed § 108.02(15) in at least one prior case, *Broyhill Furniture Indus., Inc.*, UI Hearing No. S0100223MD (LIRC, October 24, 2003), *aff'd sub nom. Broyhill Furniture Indus., Inc. v. Jim Haugen, LIRC & DWD*, Case No. 2003CV3585 (Wis. Cir. Ct. Dane Co., March 24, 2005), that addressed whether a worker's service performed partly outside and partly inside the state was Wisconsin employment under the statute.

■

¶ 11. Regarding LIRC's determination that the workers were Gilbert's employees within the meaning of WIS. STAT. § 108.02(12), we conclude, and both LIRC and Gilbert agree, that the agency's decision is entitled to great weight deference. As LIRC points out, the commission has extensive experience in construing and applying this statute in determining whether a worker is an employee under the Wisconsin Unemployment Compensation Law.

### *Discussion*

¶ 12. There are two issues in this case: (1) whether the service of Gilbert's workers constituted "employment" within the meaning of WIS. STAT. § 108.02(15) rendering his business a Wisconsin employer subject to unemployment tax; and (2) whether Hilby, Sheldon, Shireman and Ryan Gilbert were Gilbert's employees for whom Gilbert was required to pay unemployment insurance under § 108.02(12). We address each issue in turn.

## I. Whether the Workers' Service Constituted "Employment" in Wisconsin under WIS. STAT. § 108.02(15) Rendering Gilbert a Wisconsin Employer Subject to Unemployment Tax

¶ 13. WISCONSIN STAT. § 108.02(15)[2] establishes a hierarchy of criteria for determining when a worker's services constitute "employment" in Wisconsin. These criteria closely track a uniform definition of "employment" developed by federal officials in the 1930's. *Compare* WIS. STAT. § 108.02(15)(b) and (d) with Social Security Board, Employment Security Memorandum No. 13, 1937 (discussed in *Iverson Const., Inc. v. Department of Employment Servs., Div. of Job Serv.*, 449 N.W.2d 356, 359 (Iowa 1989)). According to the Social Security Board, a purpose of this definition is to ensure that an individual's employment is "allocated to one State and not divided among the several States in which he [or she] might perform services." Social Security Board, Employment Security Memorandum No. 13, 1937.

¶ 14. The first criterion for determining whether employment is based in Wisconsin is "localization."

---

[2] As pertinent, WIS. STAT. § 108.02(15) provides:

(b) The term "employment" shall include an individual's entire service performed within, or partly within and partly outside, Wisconsin, if such service is "localized" in Wisconsin; and shall also include such service, if it is not "localized" in any state but is performed partly within Wisconsin, and if:

1. The base of operations, or, if there is no base of operations, then the place from which such service is directed or controlled, is in Wisconsin; or

2. The base of operations or place from which such service is directed or controlled is not in any state in which some part of such service is performed, but the individual's residence is in Wisconsin.

Under WIS. STAT. § 108.02(15), "employment" includes "an individual's entire service performed within, or partly within and partly outside, Wisconsin, if such service is 'localized' in Wisconsin." A service is considered localized in a state if such service "is performed entirely within such state, or if such service is performed partly within and partly outside such state but the service performed outside such state is incidental to the individual's service within such state." Sec. 108.02(15)(d). An individual's service may be considered incidental if it is temporary or transitory in nature or consists of isolated transactions. *Id.*

¶ 15. The second criterion is whether a "base of operations" for the service exists. If the worker's service is not "localized" in any state, the service still constitutes "employment" in Wisconsin under WIS. STAT. § 108.02(15)(b) if the service is partly performed in Wisconsin, and if the base of operations for the service is in Wisconsin. Case law has defined "base of operations" as "the place of a more or less permanent nature from which the claimant commences his work and to which he customarily returns in order to receive instructions and communications." *Heller v. International Transp., Inc.*, 481 P. 2d 602, 604 (Idaho 1971) (citations omitted).

¶ 16. The third criterion is whether the service is "directed or controlled" from a place in Wisconsin. If the worker's service is not "localized" in any state, and no "base of operations" exists for his or her service, the service still constitutes employment in Wisconsin under WIS. STAT. § 108.02(15) if the service is partly performed in Wisconsin, and if the service is "directed or controlled" from a site in Wisconsin. Sec. 108.02(15)(b)1.

¶ 17. The fourth and final criterion is the worker's residence. If the worker's service is not "local-

ized" in any state, no "base of operations" exists in any state for his or her service, and the service is not "directed or controlled" from Wisconsin, the service still constitutes employment in Wisconsin under WIS. STAT. § 108.02(15) if the worker resides in Wisconsin. Sec. 108.02(15)(b)2.

¶ 18. Applying this hierarchy of criteria to the facts of this case, LIRC determined that the services of Hilby, Sheldon, Shireman and Ryan Gilbert did not fulfill the first two criteria, concluding the workers' services were neither "localized" in any state nor was there a "base of operations" for the service. However, LIRC determined that the workers' services fulfilled the third criterion, concluding that their services were "directed and controlled" from Gilbert's business office in Hazel Green, Wisconsin.[3] On this basis, LIRC concluded that the workers' services constituted employment in Wisconsin under WIS. STAT. § 108.02(15).

¶ 19. On appeal, Gilbert challenges LIRC's conclusions that the workers' services were not localized in any state and that their services were directed and controlled from his business office in Hazel Green, Wisconsin. We address these two challenges in turn.[4]

*1. Localization of Service*

¶ 20. LIRC made the following findings pertinent to the question of whether the workers' services were localized in any state. In 1999, Shireman and Hilby worked approximately six percent of the time in Wis-

---

[3] LIRC did not consider the fourth criterion, the situs of the workers' residency.

[4] Gilbert does not challenge LIRC's determination that there was no single base of operation for the workers' services. We therefore do not address this criterion.

738

consin, Ryan Gilbert worked approximately eight percent of the time in Wisconsin, and Sheldon did no work for Gilbert in Wisconsin.[5] Thirty-three percent of Hilby's work, twenty-five percent of Shireman's work, twenty-four percent of Sheldon's work, and twenty-six percent of Ryan Gilbert's work was in Wisconsin. In 2001, ten to eleven percent of Sheldon's, Shireman's and Ryan Gilbert's work was in Wisconsin.[6] The work performed in Wisconsin was not connected to the work in Illinois and was ongoing. Gary Gilbert Construction builds three to five homes per year, and each home takes approximately three months to build. Finally, LIRC found that Gilbert's workers started a home in Shullsburg, Wisconsin, in 1999, which overlapped into 2000, and built a home in Benton, Wisconsin, in 2000.

¶ 21. In assessing whether the workers' services were localized in any state, LIRC acknowledged that a majority of the services was performed in Illinois, and services performed in Wisconsin accounted for no more than ten percent of services in 1999 and 2001, and twenty-five percent of services in 2000. LIRC nonetheless concluded that the services were not localized in Illinois within the meaning of WIS. STAT. §§ 108.02(15)(b) and (d) because the services performed outside of Illinois and in Wisconsin were not "incidental" to the Illinois services because they were neither "temporary" nor "transitory" in nature.

¶ 22. Gilbert takes issue with this determination, contending that because the lion's share of services were provided in Illinois, the workers' services were

---

[5] As a result, LIRC did not assess Gilbert unemployment insurance taxes on Sheldon's 1999 employment.

[6] As noted earlier, Hilby's employment with Gilbert ended in 2000.

localized in Illinois. He asserts that Wisconsin services were "incidental," "temporary" and "isolated" transactions under WIS. STAT. § 108.02(15)(d). For the reasons stated below, we disagree.

¶ 23. The controversy turns on the meaning of the language "incidental to the individual's service within such state (for example, is temporary or transitory in nature or consists of isolated transactions)" used in WIS. STAT. § 108.02(15)(d) to describe when a service is localized in a state when some of the work is performed outside of that state. We conclude that LIRC reasonably concluded that the worker's services were not localized in any state.

¶ 24. LIRC's analysis considered commonly accepted definitions of the words "incidental," "temporary," "transitory" and "isolated" in the absence of statutory definitions for these terms. WEBSTER'S II NEW COLLEGE DICTIONARY (1999) defines these terms as follows: "Incidental" means "[o]f a minor, casual, or subordinate nature," *id.* at 560; "temporary" is defined as "[l]asting, used or enjoyed for a limited time," *id.* at 1135–36; "transitory" means "lasting or existing only for a short time," *id.* at 1171; and "isolated" is defined as "set apart from a group or whole," *id.* at 588.

¶ 25. Applying the above definitions to the facts, LIRC reasonably concluded that the work was not localized in any state within the meaning of WIS. STAT. §§ 108.02(15)(b) and (d). In Gilbert's business, each construction site was independent from other work sites. Thus, the service performed at a construction site in Wisconsin cannot be said to be subordinate to the work in Illinois. While these independent sites were set apart from each other, the Wisconsin sites, which were clustered near the Illinois-Wisconsin border, were no more set apart from the other sites geographically than many

of the Illinois work sites were from each other. And though the Wisconsin sites were operational for only a limited period of time—until completion of the project, like all of the construction sites—the company's presence in Wisconsin involved multiple projects and was recurring.

¶ 26. Prior case law and the agency's own precedents support LIRC's conclusion that the workers' services were not localized in any state. In reaching its conclusion, LIRC relied on *Iverson Construction*, 449 N.W.2d at 359. There, a construction business headquartered in Platteville, Wisconsin, performed work at project sites in both Wisconsin and Iowa. *Id.* Applying Iowa's version of the uniform unemployment insurance law, the Iowa Supreme Court concluded that the work was not "localized" in either Iowa or Wisconsin because the Iowa services were "a major, regular, enduring and frequent part" of the services performed by the business. *Id.* at 360. LIRC also relied on *Baker v. County of Marquette*, UI Hearing No. 01003754BO (LIRC Dec. 20, 2001), *aff'd sub nom. County of Marquette v. LIRC and Baker et al.*, Case No. 2002CV0007 (Wis. Cir. Ct., Marquette Co., 2002), which, in discussing the meaning of "temporary" within a different subsection of the statute, WIS. STAT. § 108.02(15)(f)5., suggested that "temporary" is not the same as "intermittent" or "irregular."

¶ 27. Gilbert fails to persuade us that his application of WIS. STAT. §§ 108.02(15)(b) and (d) to the facts is more reasonable than LIRC's. Gilbert argues that the work was localized in Illinois because the work was "primarily performed" in Illinois. However, the statutory test focuses not on where the majority of the work is performed, but on whether the work performed outside of a state is incidental to the work performed within a state. Gilbert later asserts that the work

performed in Wisconsin was "temporary," "transitory" and "isolated" within the "plain meaning" of these terms. However, he fails to offer up his own dictionary definitions of these terms and his argument is otherwise conclusory.

*2. Direction and Control of Services from Hazel Green*

¶ 28. To determine whether the workers' services were directed and controlled in Wisconsin, LIRC applied the "direction or control of services" test adopted from Wis. Stat. §§ 108.02(15)(b) and (d), explaining:

> The focus of this test is upon the place from which the entire service of the worker during the reporting period is directed or controlled, and not upon the place from which any particular project is directed or controlled. *See Iverson [Construction,* 449 N.W.2d at 361]; *Claim of Mallia,* [86 N.Y.2d 577, 581 (N.Y. 1949)]. In addition, the statute refers to a single source of direction or control for the entire service.

*Gilbert v. Division of Unemployment Insurance, Department of Workforce Development,* UI Hearing No. S0200083DB (LIRC July 21, 2005).

¶ 29. LIRC described the activities Gilbert performed out of the Hazel Green office as follows:

> From his headquarters in Hazel Green, Wisconsin, Gilbert, among other activities, presumably selected and negotiated the terms of the construction projects on which the workers performed the subject services, scheduled these projects, determined the type and quantity of materials required for these projects, communicated with . . . clients as to construction specifications, prepared his annual contracts with the workers, received billing statements from the workers and from vendors of other goods and services and prepared the resulting payments, and maintained business records.

*Id.* Applying these facts to the direction and control of services test, LIRC concluded as follows:

> The type of direction and control Gilbert exercised over the entire service of the workers, as opposed to the type of direction and control he exercised over their service on a particular project, consisted of activities such as the selection of the projects, the scheduling of the projects, the negotiation and preparation of the workers' annual contracts, and the preparation of bi-weekly payments to them. This supports a conclusion that the direction and control of the workers' entire service, during the reporting periods at issue, within the meaning of Wis. Stat. § 108.02(15)(b)1., was in Wisconsin. As a result, Gilbert would be liable to Wisconsin for unemployment insurance contributions and interest for the subject workers for 1999 and for the first two quarters of 2000 and 2001, except . . . in regard to Sheldon in 1999 and Hilby in 2001.

*Id.*

¶ 30. Gilbert argues that LIRC erred in concluding that the direction and control of the workers' services came from Wisconsin. He claims that he did not exercise control over the workers from any state because the workers received direction and control at the job sites and from the predominantly Illinois-based homeowners. Gilbert appears to argue that the test focuses on control at the project level rather than control over all services rendered by the workers. In support, he cites *Tri-State Home Improvement Co., Inc. v. LIRC*, 111 Wis. 2d 103, 330 N.W.2d 186 (1983), and *Larson v. LIRC*, 184 Wis. 2d 378, 516 N.W.2d 456 (Ct. App. 1994). Gilbert's reliance on these cases is misplaced. Both *Tri-State* and *Larson* address the question of whether an individual was an employee within the meaning of Wis. Stat. §§ 108.02(12)(a) and (b), an issue

we take up later in this opinion. Neither case addresses whether the putative employer exerted direction and control from Wisconsin for purposes of determining whether the services of the workers constituted employment in Wisconsin under WIS. STAT. § 108.02(15)(b). Moreover, as LIRC argues, an interpretation of the direction and control test that focuses on multiple project sites rather than the business's central office is inconsistent with the purpose of the statute, which is to allocate to a single state the administration of unemployment insurance.

¶ 31. We conclude that the facts as found by LIRC provide a reasonable basis of support for LIRC's conclusion that the workers' services were controlled and directed by Gilbert from his Hazel Green, Wisconsin, general office. As LIRC points out on appeal, Gilbert does not dispute LIRC's findings that he selected projects, scheduled work, prepared contracts with customers and prepared workers' contracts and paychecks from his Hazel Green office. These facts establish that the overall direction and control of the workers' services came from Gilbert's office in Hazel Green.

¶ 32. In summary, we conclude, based on the foregoing analysis, that LIRC reasonably determined that the workers' services constituted employment in Wisconsin within the meaning of WIS. STAT. § 108.02(15)(b) and (d). We now consider whether the workers were employees within the meaning of §§ 108.02(12)(b)2. and (bm).

## II. Whether the Workers were Gilbert's "Employees" Within the Meaning of WIS. STAT. §§ 108.02(12)(b)2. and (bm)

¶ 33. The test for determining whether an individual is an employee within the meaning of WIS.

STAT. §§ 108.02(12)(b)2. and (bm) follows a two-step analysis. *Keeler v. LIRC*, 154 Wis. 2d 626, 631, 453 N.W.2d 902 (Ct. App. 1990). The first step is to determine whether the individual has performed services for pay. *Id.* The department carries the burden of proof on this question. *Id.* If the department demonstrates that the individual performed services for pay, the individual is presumed to be an employee for purposes of unemployment compensation and the burden shifts to the employer to prove that the individual is exempt under §§ 108.02(12)(b) or (bm). *Id.*

¶ 34. WISCONSIN STAT. § 108.02(12)(b) applies to work performed between January 1, 1996, and December 31, 1999. To prove that an individual was not an employee for work performed during this time period, the employer must first show under § 108.02(12)(b)1. that the individual either:

a. Holds or has applied for an employer identification number with the federal internal revenue service; or

b. Has filed business or self-employment income tax returns with the federal internal revenue service based on such services in the previous year.

If at least one of the above conditions is satisfied, then the employer must demonstrate that the individual meets at least six of the following eight criteria under § 108.02(12)(b)2. to establish that the individual is exempt from the unemployment compensation law:

a. The individual maintains a separate business with his or her own office, equipment, materials and other facilities.

b. The individual operates under contracts to perform specific services for specific amounts of money and under which the individual controls the means and method of performing the services.

c. The individual incurs the main expenses related to the services that he or she performs under contract.

d. The individual is responsible for the satisfactory completion of the services that he or she contracts to perform and is liable for a failure to satisfactorily complete the services.

e. The individual receives compensation for services performed under a contract on a commission or per-job or competitive-bid basis and not on any other basis.

f. The individual may realize a profit or suffer a loss under contracts to perform services.

g. The individual has recurring business liabilities or obligations.

h. The success or failure of the individual's business depends on the relationship of business receipts to expenditures.

¶ 35. For work performed during the period beginning on January 1, 2000, the test set forth in Wis. Stat. § 108.02(12)(bm) applies. Section 108.02(12)(bm) merges the two threshold conditions outlined in § 108.02(12)(b)1. with the eight conditions listed in § 108.02(12)(b)2. to create a single, ten-condition test. To prove that the individual is not an employee under § 108.02(12)(bm), the employer must demonstrate that the individual meets at least seven of the following ten conditions:

1. The individual holds or has applied for an identification number with the federal internal revenue service.

2. The individual has filed business or self-employment income tax returns with the federal internal revenue service based on such services in the previous year or, in the case of a new business, in the year in which such services were first performed.

3. The individual maintains a separate business with his or her own office, equipment, materials and other facilities.

4. The individual operates under contracts to perform specific services for specific amounts of money and under which the individual controls the means and methods of performing such services.

5. The individual incurs the main expenses related to the services that he or she performs under contract.

6. The individual is responsible for the satisfactory completion of the services that he or she contracts to perform and is liable for a failure to satisfactorily complete the services.

7. The individual receives compensation for services performed under a contract on a commission or per-job or competitive-bid basis and not on any other basis.

8. The individual may realize a profit or suffer a loss under contracts to perform such services.

9. The individual has recurring business liabilities or obligations.

10. The success or failure of the individual's business depends on the relationship of business receipts to expenditures.

¶ 36. Gilbert does not dispute that the department proved that the workers performed services for pay during the relevant period, and that Sheldon performed services for pay in 2000 and 2001, and, as a result, he carries the burden to prove that the workers were independent contractors. Gilbert does not challenge LIRC's factual findings about the individual circumstances of the workers. Rather, Gilbert argues that LIRC erred in concluding that he failed to prove that

the workers satisfied a sufficient number of criteria under Wis. Stat. §§ 108.02(12)(b)2. and (bm) to overcome the presumption that the workers were his employees.

¶ 37. LIRC concluded that Gilbert proved that in 1999 the workers met one of the two threshold criteria under Wis. Stat. § 108.02(12)(b)1.b. and three of the eight required criteria of § 108.02(12)(b)2. LIRC concluded that Gilbert proved that the workers in 2000 and 2001 met four of the ten criteria set forth in § 108.02(12)(bm), the same criteria LIRC found were met in 1999. Specifically, LIRC found that Gilbert proved that the workers filed self-employed or business income tax returns, satisfying §§ 108.02(12)(b)1.b. and (bm)2; incurred expenses for their services, satisfying §§ 108.02(12)(b)2.c. and (bm)5.; were responsible for the satisfactory completion of their services, satisfying §§ 108.02(12)(b)2.d. and (bm)6.; and had recurring business liabilities or obligations in connection with their services, satisfying §§ 108.02(12)(b)2.g. and (bm)9. Thus, to determine whether Gilbert overcame the presumption that the workers were not his employees, we examine the remaining criteria to determine whether, based on the facts as found by LIRC, the workers satisfied at least two additional criteria under § 108.02(12)(b)2. for 1999 and four additional criteria under § 108.02(12)(bm) for 2000 and 2001.

 *A. The individual maintains a separate business with his or her own office, equipment, materials and other facilities.*

¶ 38. This criterion asks whether the worker has maintained a separate business with the features of an actual business. Wis. Stat. §§ 108.02(12)(b)2.a. and 108.02(12)(bm)3. LIRC made the following findings

748

relevant to this criterion. None of the workers except Ryan Gilbert did construction work for anyone other than Gilbert. While Sheldon, Shireman and Ryan Gilbert had business cards, neither obtained work by posting or distributing the cards. None of the workers had other jobs lined up in the event that they lost their jobs with Gilbert. Gilbert or Heartbilt supplied all building materials and supplies except tools, which the workers furnished. Shireman and Hilby did not maintain offices at their homes. Ryan Gilbert had an office at his home, which he used only to prepare bills and keep records. Based on these findings, LIRC concluded that Gilbert failed to prove that the workers maintained separate businesses with their own offices, equipment, materials and other facilities.

¶ 39. LIRC explained that the focus of this criterion is on "whether a separate business, i.e., an enterprise created and existing separate and apart from the relationship with the putative employer, is being maintained with the individual's own resources," citing *Princess House, Inc. v. DILHR*, 111 Wis. 2d 46, 70, 330 N.W.2d 169 (1983). LIRC also noted that in *Quality Commc'n Specialists, Inc.*, UI Hearing No. S0000094MW and S0000095MW (LIRC July 30, 2001), it determined that the employer must prove all parts of the test articulated in this criterion to meet his or her burden of proof. Applying the facts to this standard, LIRC concluded that none of the workers maintained a separate business. LIRC determined that while "the record shows that the workers generally used their own equipment, it does not show that the workers were actually engaged in a separate business with an office devoted to that purpose." LIRC further noted that the fact that the workers generally did not work for other entities was inconsistent with the existence of a sepa-

rate business, citing *Prince Cable, Inc.*, UI Hearing No. S9900227MW (LIRC Feb. 23, 2001). Finally, LIRC concluded that "creating a business name and having business cards printed, from which no business was generated, without more, is insufficient to satisfy this condition."

¶ 40. Gilbert argues that the workers satisfied this condition because he proved that the workers own and supply thousands of dollars of their own equipment, and that Shireman and Ryan Gilbert had business cards. He further argues that, given the nature of the construction work, the fact that the workers did not have full-fledged separate offices for their business should matter little in determining whether the workers had actual separate businesses.

¶ 41. We conclude that the facts on which LIRC relied form a reasonable basis for its conclusion. The statute requires an individual to own and maintain an office, equipment, materials and other facilities, which are typical indicators of an existing business. Gilbert proved only that Ryan Gilbert, Hilby, Shireman and Sheldon owned their equipment; that Ryan Gilbert, Shireman and Sheldon had their own business cards from which no business was generated; and that Ryan Gilbert had a home office which he used to pay bills and keep records. The workers did not supply their own construction materials for the projects they worked on. Furthermore, the fact that three workers had their own business cards did little to demonstrate their independence from Gilbert's operations, given that the business cards generated no new business for the men. Gilbert therefore fails to demonstrate that his workers met this criterion.

B. *The individual operates under contracts to perform specific services for specific amounts of money and under which the individual controls the means and methods of performing such services.*

¶ 42. This criterion concerns the worker's pay arrangement with the employer and the degree of control the worker has over the means and methods of providing services. WIS. STAT. §§ 102.08(12)(b)2.b. and 102.08(12)(bm)4. LIRC explained that this criterion requires multiple contracts, whether "with separate entities, or multiple serial contracts with the putative employer if such contracts are shown to have been negotiated 'at arm's length,' with terms that will vary over time and will vary depending on the specific services covered by the contract," citing commission decisions in *T-N-T Express LLC*, UI Hearing Nos. S9700385MD and S9700386MD (LIRC Feb. 22, 2000) and *Dane County Hockey Officials Ass'n, Inc.*, UI Hearing No. S9800101 (LIRC Feb. 22, 2000).

¶ 43. LIRC found that the facts established that the workers exercised enough independence and discretion in carrying out their construction responsibilities to show that they controlled the means and method of performing their services. However, LIRC concluded that Gilbert failed to prove that the workers had multiple contracts. It found that, for the most part, the workers had annual contracts with Gilbert that set an hourly rate for carpentry work and a piecework rate for electrical and roofing, or a piecework rate that applied to all work performed during the year. The only exception to this arrangement was that Sheldon and Shireman sometimes bid on drywall and roofing work at a piecework rate for individual projects.

¶ 44. We conclude that these facts are sufficient to support LIRC's conclusion that Gilbert failed to prove that the workers operated under contracts for services under which the workers controlled the means and methods of performing such services. The facts found by LIRC show that the workers did not enter into multiple contracts with more than one entity; the only entity they contracted with was Gilbert. In addition, there is no evidence indicating "arms length" negotiations between any individual worker and Gilbert, let alone any other customer. Ryan Gilbert testified he negotiated with his father, but Gilbert simply rejected any terms he disagreed with and left no room for further negotiations.

¶ 45. Gilbert argues that the facts are sufficient to show that this criterion was fulfilled because workers controlled the means and method by which their services were provided. However, he does not address LIRC's legal conclusion that the criterion also requires proof of multiple contracts, or its determination that Gilbert failed to meet this requirement. He thus concedes these points, and his argument that the workers satisfied this condition fails.

C. *The individual receives compensation for services performed under a contract on a commission or per-job or competitive-bid basis and not on any other basis.*

¶ 46. To satisfy this criterion, the employer must prove that each worker was paid only on a commission, per-job or competitive-bid basis. Wis. Stat. §§ 108.02(12)(b)2.e. and 108.02(12)(bm)7. LIRC found that all of the workers were paid by the hour, and thus concluded that they were compensated on a basis other than by commission, competitive bid or per job.

¶ 47. Gilbert argues that this criterion was satisfied because the workers submitted bids on the work, citing testimony that Ryan Gilbert made his bids for electrical work based on the number of electrical openings and that Hilby left because Gilbert rejected one of his bids. Gilbert is mistaken. This criterion requires that the workers be paid only by commission, competitive bid or per job, and LIRC found that all four workers were paid on an hourly basis. Thus, the workers fail to satisfy this criterion.

D. *The success or failure of the individual's business depends on the relationship of business receipts to expenditures.*

¶ 48. This criterion asks whether the fortunes of the worker's business hinge on business receipts and expenditures. Wɪs. Stat. §§ 108.02(12)(b)2.h. and 108.02(12)(b)10. LIRC found that each worker performed services exclusively for Gilbert and was paid by Gilbert every other week regardless of whether Gilbert had been paid by his clients. LIRC noted that it had interpreted this criterion in a previous case to require that "a significant investment [be] put at risk and there [be] the potential for real success through the growth in the value of the investment and for real failure in the sense of actual loss of the investment," citing *Thomas Gronna, The Floor Guys*, UI Hearing No. S9900063WU (LIRC Feb. 22, 2000). LIRC concluded that the nature of the workers' arrangement with Gilbert did not support a conclusion that the workers "assumed the type of entrepreneurial risk" associated with this criterion.

¶ 49. Gilbert argues that the success or failure of each worker's business depended on the relationship of business receipts to expenditures because the workers had recurring business liabilities, were liable for their

failure to satisfactorily complete their services, and could potentially suffer a loss if they failed to limit their expenses. However, Gilbert does not address the factors on which LIRC relied in determining that the workers did not assume a sufficient level of entrepreneurial risk to satisfy this criterion. Because Gilbert fails to address the basis for LIRC's determination, we consider this argument insufficiently developed and decline to address it further. *See State v. Harenda Enters., Inc.*, 2008 WI 16, ¶ 57 n.14, 307 Wis. 2d 604, 746 N.W.2d 25.

¶ 50. Having rejected Gilbert's challenges to LIRC's adverse determinations on the four criteria discussed above, we need not address Gilbert's challenges to LIRC's adverse determinations regarding the remaining two criteria[7] because it would not change our conclusion that Gilbert has failed to prove a sufficient number of criteria under WIS. STAT. § 108.02(12)(b) (six of eight) or 108.02(12)(bm) (seven of ten) to prevail under either standard.

¶ 51. Based on the foregoing analysis, we conclude that LIRC reasonably determined that Ryan Gilbert, Hilby, Shireman and Sheldon were Gilbert's employees in the years that each worker rendered services for Gilbert. We further conclude that these determinations were based on a reasonable interpretation of WIS. STAT. §§ 108.02(12)(b) and (bm).

---

[7] These two criteria are whether the individual holds or has applied for an employer identification number with the federal internal revenue service, WIS. STAT. §§ 108.02(12)(b)1.a. and (bm) 1., and whether the individual may realize a profit or suffer a loss under contracts to perform such services, §§ 108.02(12)(b)2.f. and (bm)8.

### *Conclusion*

¶ 52. In sum, we conclude, applying due weight deference, that LIRC reasonably determined that the service of the workers was employment in Wisconsin rendering Gilbert a Wisconsin employer for unemployment insurance tax purposes, and that this determination was based on a reasonable interpretation of Wis. STAT. § 108.02(15) that comports with the statute's purpose. We also conclude that Gilbert's view that the service of the workers was not employment in Wisconsin is based on an interpretation of § 108.02(15) that is not more reasonable than LIRC's. We further conclude, applying great weight deference, that LIRC reasonably determined that Gilbert's workers were his employees for unemployment tax purposes, and that this determination was based on a reasonable interpretation of Wis. STAT. §§ 108.02(12)(b) and (bm). Accordingly, we affirm the judgment of the circuit court.

*By the Court.*—Judgment affirmed.